LITTLE ROCK MUNICIPAL AIRPORT COMMISSION v. ARKANSAS VALLEY COMPRESS & WAREHOUSE COMPANY.

5-624                                   277 S. W. 2d 836

Opinion delivered April 18, 1955.

*Bailey, Warren & Bullion,* for appellant.

*House, Moses & Holmes* and *Townsend & Townsend,* for appellee.

Ed. F. McFaddin, Justice. The present case is a sequel to that of *Arkansas Valley Compress v. Morgan*, 217 Ark. 161, 229 S. W. 2d 133, sometimes hereinafter referred to as "the first case," which must be read for an understanding of the background of the present case. The first case was filed April 2, 1948, decree rendered in the Chancery Court on July 2, 1949, and opinion of this Court delivered on April 17, 1950. We there held that Arkansas Valley's lease from the City of Little Rock was valid, and we incorporated this paragraph in the concluding portion of that opinion:

"*Negotiations for Increased Rentals.* During World War II the United States Government took possession of all of the airport property, including Building No. 19, and constructed an additional (*i.e.* second) floor on a portion of Building No. 19. After the United States Government returned the airport property to the City, and the City returned Building No. 19 to Arkansas Valley the City began negotiations with Arkansas Valley for additional rent because of the enlargement of Building No. 19 by the United States Government. While these negotiations were being conducted, the appellee, Morgan, filed this taxpayer's suit which necessarily suspended the correspondence. We presume that the negotiations will be resumed after this litigation is concluded; and we point out that nothing in this opinion is to be considered as an expression concerning the rights of either party in the matter of increased rentals because of enlargement of the building."

The appellant, Little Rock Municipal Airport Commission (hereinafter called "City"), filed the present suit against appellee, Arkansas Valley Compress & Warehouse Company (hereinafter called "Arkansas Valley"), in the Chancery Court on March 4, 1953. The complaint alleged *inter alia*: that the Little Rock Municipal Airport Commission had full power to act for the City in this case; that Arkansas Valley held the lease on Building No. 19 of the airport property (as decided in our opinion in the first case) subject to the recapture rights of the Federal Government; that in 1941 the Fed-

eral Government recaptured the Building No. 19, along with the entire airport, for the period of World War II; that during such recapture the Federal Government added a second floor to a part of said Building No. 19 and installed heating and other equipment in all of Building No. 19; that in March, 1946, the Federal Government released Building No. 19 from the recapture; that Arkansas Valley immediately took possession of the Building No. 19 and the heating and other equipment installed by the Federal Government during the recapture period; that in May, 1951, the City received the deed returning the Building No. 19 from the Federal Government to the City and also conveying the said heating and other equipment to the City; that the City has demanded of Arkansas Valley increased rent payments because of the second floor on Building No. 19 and such increased payments have been refused; that the City has demanded payment for the heating and other equipment which Arkansas Valley has converted, and such payment has been refused; that since 1947 Arkansas Valley has been receiving $55,000.00 annual rental from U. S. Time Corporation on Building No. 19; that Arkansas Valley is being unjustly enriched because of the second floor on Building No. 19 and should make restitution to the City because of such unjust enrichment; and that the City should also have judgment for $40,000.00 for the heating and other equipment placed in the Building No. 19 by the Federal Government in the recapture period and deeded to the City in 1951 and converted by Arkansas Valley.

Upon issue joined a trial in the Chancery Court resulted in a decree refusing the City any relief for increased rentals but allowing the City damages of $16,-000.00 for the heating and other equipment converted by Arkansas Valley. The City has appealed from the decree refusing the increased rentals; and Arkansas Valley has cross-appealed from the judgment of $16,000.00 against it for the conversion of the heating and other equipment.

I. *The City's Claim for Increased Rentals.* The City seeks increased rentals on the sole theory that Arkansas Valley is being unjustly enriched by having and

using the second floor of the building, whereas there was only one floor to the Building No. 19 when the original lease was made in 1931. The City offered considerable evidence that the 16,800 square feet of floor space of the second floor would be worth a rental of at least $5,600.00 per annum.

In its briefs in this Court the City, with becoming candor, states that its entire case for increased rentals rests on the doctrine of unjust enrichment. Here is the language:

"It is the firm belief that this case presents one of unjust enrichment to a private corporation at the expense of government and public funds. Quite frankly, and in spite of vast research on this case, we state to the Court that we have failed to find any adjudicated case wherein the facts approach similarity to the present facts. Therefore, our brief in this instance will be limited, primarily, to general principles of unjust enrichment [1] and the firm rights of the Commission to restitution thereunder."

Here is the heart of the City's argument:

"The facts of the case at bar . . . are that the City (landlord) leased to Arkansas Valley (tenant) a public building for a long period of years—almost two generations. Through no fault of the lessor or lessee and not at their instigation, insistence or suggestion, that

---

[1] The City cites us to no cases justifying an application of the doctrine of unjust enrichment in a situation such as here exists; and the City admits that the only statements that even indicate unjust enrichment in a case such as this are contained on pages 14 and 643-4 of the American Law Institute's "Re-Statement of the Law of Restitution": We quote these:

Page 14: "In other situations, a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust."

Pages 643-644: "There are some situations, however, in which a constructive trust is imposed in favor of a plaintiff who has not suffered a loss or who has not suffered a loss as great as the benefit received by the defendant. In these situations the defendant is compelled to surrender the benefit on the ground that he would be unjustly enriched if he were permitted to retain it, even though that enrichment is not at the expense or wholly at the expense of the plaintiff."

public building was vastly improved and enhanced by the federal government *at a time when the U. S. had the absolute right to do so.* When these improvements were made neither the lessor nor lessee had any rights in and to the building (other than contingent reversionary); nor did either of them have the right or duty to prevent the U. S. from doing anything it wanted to, including the destruction of this building, if it became necessary in terms of the emergency.''

Our study leads us to the conclusion that the doctrine of unjust enrichment is not applicable to the situation existing in this case. A number of factors concurrently impel such conclusion:

(a) When the City made the 1931 lease to Arkansas Valley the City was acting in a proprietary capacity rather than in a governmental capacity. This is detailed in our opinion in the first case—*Arkansas Valley Compress & Warehouse Co.* v. *Morgan,* 217 Ark. 161, 229 S. W. 2d 133.

(b) The said 1931 lease provided that if the Federal Government ever recaptured the Building No. 19 and subsequently returned it to the City, then the 1931 lease between the City and Arkansas Valley would come back into full force upon such return: so it is under the 1931 lease that the rights of the City and Arkansas Valley are to be measured.

(c) The evidence herein does not show that Arkansas Valley is receiving any additional amount from U. S. Time because of the second floor. The evidence shows that the second floor of the Building No. 19 by itself would be of little value. The first floor had and has 201,000 square feet of floor space and the second floor has only 16,800 square feet of floor space and has no way of ingress or egress except by use of the first floor. So it is very doubtful that there is any enrichment by reason of the second floor.

(d) Even if there had been any enrichment it is not *unjust* so as to give the City a cause of action. The

situation between the City and Arkansas Valley is much the same as if some third person had seen fit to gratuitously improve a building that any individual had rented from another individual. The City did not spend one penny in putting the second floor on the Building No. 19.

Usually unjust enrichment arises either (a) when the person claiming the unjust enrichment has made an expenditure, or (b) when the person receiving the unjust enrichment has obtained it by reason of color of authority of the other. We have two comparatively recent cases in Arkansas on this matter of unjust enrichment and these point to the conclusion that we now reach.

In *Brookfield* v. *Rock Island Imp. Co.*, 205 Ark. 573, 169 S. W. 2d 662, 147 A. L. R. 451, the Rock Island Improvement Company had for many years paid taxes on lands owned by Brookfield and sought to recover for all such payments. We allowed recovery of the taxes paid for three years next before the filing of the suit but took occasion to state of the doctrine of unjust enrichment (as found in § 1 of the ''Re-Statement of the Law of Restitution''), as follows:

''The basis of the right to recover is that the defendant has been unjustly enriched *at the expense of the plaintiff,* and that plaintiff is entitled to restitution therefor.''

In *Cook, Comm.* v. *Sears-Roebuck*, 212 Ark. 308, 206 S. W. 2d 20, the facts showed that under the authority of Act 386 of 1941 Sears had been regularly collecting gross receipts tax on sales that it made; but that Sears desired to contest the legality of the tax and keep for itself the money that it had collected from its vendees. We held that since Sears had collected the money under the authority of an Act of the State, Sears would have been unjustly enriched to be allowed to contest the validity of the money collected. We there quoted from American Law Institute's ''Re-Statement of the Law of Restitution'' and cited ''Words and Phrases'' where other cases

could be found construing the words "unjust enrichment." [2]

These two cases clearly show that the doctrine of unjust enrichment finds no application in the case at bar. While we desire to give the doctrine a broad construction commensurate with the power of equity to allow redress for all wrongs, nevertheless we cannot find in this case any application for the doctrine of unjust enrichment. Arkansas Valley made no representations of any kind to the detriment of the City and the City made no expenditures on the Building. Therefore we affirm that portion of the Chancery decree refusing the City increased rentals.

II. *Damages for Conversion of Personal Property.* The Trial Court awarded the City a judgment against Arkansas Valley for $16,000.00 for the conversion of the heating and other equipment left in Building No. 19 by the Federal Government and deeded to the City. From that judgment Arkansas Valley has appealed, arguing *inter alia*: (1) lack of title in the City; (2) limitations; and (3) excessiveness.

In the decree the Trial Court made the following as some of its findings:

"The Government occupied and used this Airport from 1941 to 1946. In 1943 it constructed, with additional public funds, a second story addition to this warehouse building, which addition, or improvement, contains 16,800 square feet of office floor space, and was built at an approximate cost of $54,704.00. In addition, and during its occupancy in World War II, the Government made considerable improvements to this building by installing new and modern heating and water facilities, additional fire fighting equipment, scales, fans, toilets, and a large

---

[2] In Black's Law Dictionary, 4th Ed., p. 1705, many cases are cited. A portion of the text states of unjust enrichment: "Doctrine that person shall not be allowed to profit or enrich himself inequitably at another's expense. . . . Under this doctrine a defendant has something of value at the plaintiff's expense under circumstances which impose a legal duty of restitution. . . . Doctrine permits recovery in certain instances where person has received from another a benefit retention of which would be unjust. . . ."

amount of other personalty (an itemized list of which is attached to the complaint herein as Exhibit 'B'), at a cost, in public funds, of about $40,000.00. . . .

"As the Government began to vacate the Airport, in 1946, it permitted the City to re-occupy those vacated portions under what is termed an 'interim permit.' The Government would take and did take an inventory of all property left on the Airport (as War Surplus) as it vacated, and thereafter there began rather protracted negotiations between the Government and City which did not terminate until May, 1951, at which time the Government delivered a deed to the City re-conveying the Airport, plus all additions and improvements thereto. . . .

"In March of 1953 plaintiff filed the present action asking this court to (a) require defendant to pay to plaintiff additional rent for the use and occupancy of this second story addition to Building No. 19, and (b) to require defendant to deliver to plaintiff the personalty conveyed to it by the Government, plus a reasonable rental therefor for defendants use, plus damages, or, in the alternative, to award plaintiff judgment for the fair and reasonable value of this personalty. . . .

"Plaintiff is entitled to judgment against defendant in the total sum of $16,000.00 for defendant's wrongful taking, assumption, use and conversion of the personal property which the Government gave to the City . . . by the deed of May, 1951. The court finds that the fair value of this personalty, as of May, 1951, (the date of the conveyance from the Government to City) was $16,000.00, and that defendant's taking, use and consumption thereof is and was wrongful, unlawful and inequitable."

Arkansas Valley has failed to establish in this Court that the above quoted findings are against the preponderance of the evidence: so such findings must be affirmed. *Greer* v. *Fontaine*, 71 Ark. 605, 77 S. W. 56; *Roesch* v. *Worthen Co.*, 95 Ark. 482, 130 S. W. 551, 31 L. R. A., N. S., 374; *Gilliam* v. *Peebles*, 144 Ark. 573, 223 S. W. 14; *Yelvington* v. *Mitchell*, 191 Ark. 909, 88 S. W. 2d 817;

and see the scores of cases collected in West's Arkansas Digest "Appeal & Error," § 1009.

*As to the claim that the City did not own the heating equipment and other personal property:* the answer is found in the deed from the United States of America to the City dated May 1, 1951, which conveys "... property of such nature located on the premises conveyed hereby which is reasonably necessary for the operation or maintenance ... of the structures and improvements specifically listed hereinbefore as being transferred hereby."

*As to the plea of limitations:* the facts show that Arkansas Valley took possession in 1947 by *permission* of the Federal Government, which remained the owner until 1951, so limitations could not commence to run during such permission from the Federal Government. Furthermore there was no conversion until after that time because as late as 1952 Arkansas Valley, in a letter to the City, stated that a portion of the equipment had been removed from the Building No. 19 and was located on other property of Arkansas Valley and that the City could "pick up" the equipment at any time it desired. When the City undertook to locate the equipment, there was a tremendous shortage, and the removal from the building had largely destroyed the value of the equipment. So as between the City and Arkansas Valley the conversion occurred after May, 1951.

*As to the excessiveness of the judgment of $16,000.00:* it is sufficient to say that some of the evidence supported a larger figure and some of it indicated a smaller figure. The original value of the equipment was in excess of $30,000.00. In 1947 the Government reappraised it at $19,000.00. At the trial one witness said: "You could easily figure up around $15,000.00 current market value." On the other hand the witnesses for Arkansas Valley placed values of from practically nothing up to as high as $6,450.00 on a portion of the property.

The Chancellor fixed the value of $16,000.00; and on appeal the burden is on Arkansas Valley to prove that

the Chancellor's figure is against the preponderance of the evidence. Arkansas Valley has failed to discharge that burden, so we affirm the judgment of $16,000.00 on the cross-appeal of Arkansas Valley.