Jill T. DaCOSSE *v.* John T. AHRENS, Suzanne E.
AHRENS, Thomas DaCOSSE & Frank DaCOSSE

CA 80-457                                      616 S.W. 2d 777

Court of Appeals of Arkansas
Opinion delivered June 3, 1981

*Howard & Howard*, by: *William B. Howard*, for appellant.

*Leo J. Carney, Roy E. Danuser*, and *Howell & Price*, for appellees.

JAMES R. COOPER, Judge. Appellant, the widow of John DaCosse, filed suit in Baxter County Chancery Court against appellees, executor of his will and his children by a prior marriage, seeking specific performance of a contract to make a will, or, in the alternative, restoration to her position prior to the execution of the contract.

The facts are not disputed. Appellant and John Da-Cosse were married on September 14, 1977, the third marriage for each of them. Each owned property individually at the time of the marriage. In February of 1978, the deceased created a tenancy by the entirety by deeding his separate property to himself and his new wife. They acquired two two-acre tracts in both names at approximately the same time.

On October 25, 1978, John DaCosse filed suit for divorce against appellant. On October 27, 1978, he executed a will excluding appellant and leaving all his property to his children. On January 25, 1979, John DaCosse and appellant executed a "Reconciliation Agreement." As part of the agreement, appellant was to convey to John DaCosse the interest in real estate and notes which she acquired by reason of his February, 1978 conveyance to her. The agreement further provided that "on or before April 18, 1979," appellant was to transfer the balance in a particular savings account into a joint account with her husband.

Two days after the execution of the agreement, John DaCosse suffered a heart attack and was hospitalized for ten days. He returned home, but died March 9, 1979, without executing a new will. At the time of his death appellant had not transferred the funds into a joint savings account, but she did so later, prior to April 18, 1979, on the advice of her attorney.

This suit was filed to compel enforcement of the

contract, or, in the alternative, to restore to appellant the property she conveyed to John DaCosse pursuant to the "Reconciliation Agreement." The practical effect of either prayer for relief would be the same, that is, vesting ownership of all the real property of decedent in appellant.

The trial court made detailed findings of fact, and concluded that the "Reconciliation Agreement" was a two-part contract. The Court found that the first part, to be performed on January 25, 1979, required that appellant convey to John DaCosse all of his separate property which he had conveyed to her in February of 1978.[1] The Court found that this portion of the agreement further provided that the parties were to forgive each other of any prior misconduct and resume living together. John DaCosse agreed not to give away or otherwise transfer any of the property conveyed to him without appellant's written approval. The Court found that this part of the agreement was fully performed by both parties. The Court held that appellant, in exchange for her conveyance of the property to John DaCosse, received a halt to the divorce proceedings filed by him, a resumption of the marital relationship, the possibility of becoming sole beneficiary of John's will on or before April 18, 1979, and the right to retain sole ownership of the savings account until she got the will. The Court further found that John DaCosse acquired his separate property back, was able to resume the marital relationship, and was willing to obligate himself to make a new will leaving everything to appellant within 90 days. The Court found good and mutual consideration for the first part of the agreement, and that each party got what they bargained for as of January 25, 1979.

As to the second phase of the agreement, which was unperformed at the time of John DaCosse's death, the Court found that it was conditioned on the couple living together for 90 days. John DaCosse, of course, had the option of making his will sooner if he desired. The Court found that

[1]Appellant also owned real property separately on January 25, 1979, but apparently it remained in her name only. Her separate property is not referred to in the reconciliation agreement.

John's death, prior to April 18, 1979, extinguished his obligation to make a new will, and stated:

> ... just the same, in my opinion, as the obligation to make a new will would have been extinguished if prior to April 18, 1979, Jill had given John cause for divorce and they had separated before that date and before the making of the new will. In either event Jill then would be entitled to retain her half of the savings account money. (T. 426)

The Court believed, from all the evidence, and the terms of the contract itself, that appellant had taken a calculated risk that both she and her husband would live harmoniously for at least 90 days following the reconciliation. The Court felt that there was a lack of mutuality of obligation in the event they were not living together on April 18, 1979.

Appellant transferred the money from her separate name to the joint account after John's death and before April 18, 1979. The Chancellor attributed little weight to this transfer, since the funds were transferred to a joint account with right of survivorship.

The Court noted other language in the contract which stated:

> The statutory rights of each of the parties in the estate of the other are hereby fully restored. (T. 427)

The Court interpreted this to mean that the parties intended to place themselves in the same position as they were in prior to their marriage, and that the only rights they would have in the other's estate before April 18, 1979, would be their statutory rights. Based on that interpretation of the contract and the evidence, the trial court denied any relief to appellant. We agree with the trial court that appellant is not entitled to any relief.

When construing a contract in order to give effect to the intent of the parties, the court must consider the circumstances surrounding the making of the contract, the subject

of the contract, and the situation and relation of the parties at the time of its making. *Louisiana-Nevada Transit Co.* v. *Woods*, 393 F. Supp. 177 (W. D. Ark. 1975). At the time appellant conveyed her interest in the property to her husband, she was aware of the existence of the earlier will which cut her out. She was represented by an attorney at that time and cannot claim that she did not know the effect of her actions.

The purpose of the 90 day delay in implementing the remainder of the agreement is unclear. The only testimony regarding its purpose is that of her attorney, who indicated that the delay was inserted to prove her faith in her husband. Appellant's attorney drafted the "Reconciliation Agreement." The Arkansas Supreme Court has held that when there is uncertainty or ambiguity in a contract and it is susceptible to more than one reasonable construction, then we must construe it most strongly against the party who drafted it. The reason for this rule is that the drafter of a contract is in a better position to convey a clarity in meaning by his choice of words and phraseology. *Elcare, Inc.* v. *Gocio*, 267 Ark. 605, 593 S.W. 2d 159 (1980). This rule has application in this case.

The appellant argues that the Court engrafted conditions and terms on the contract which were not included in it. We disagree. The parties had been married a short time (five months) when appellant created the tenancy by the entirety in his separate property; eleven months when the divorce action was filed, and only sixteen months when the reconciliation agreement was signed. There is no suggestion of any reason why all the terms of the agreement could not have been fulfilled in January of 1979, and, therefore, the parties must have had a reason for the delay. We believe, as did the Chancellor, that the reason was more substantial than that expressed by appellant's attorney. We agree with the Chancellor that this portion of the agreement contemplated the parties living together harmoniously at least until April 18, 1979, and, if that occurred, John DaCosse intended to devise his property to appellant, and she intended to re-establish their joint ownership of the funds she had held as her own since the separation. To hold otherwise would

require us to believe that the two contracting parties and their attorneys established a date for the performance of certain acts (execution of the will and transfer of funds) for no substantial reason.

Appellant had retained ownership of her separate property, and, from all the circumstances, it seems obvious that the parties were attempting to start over, and to forgive the past. If their fresh start was successful, they intended to perform the additional acts agreed upon. We do not believe that the delay was unimportant to the parties, and we cannot agree that, from the time the agreement was executed, John DaCosse was irrevocably obligated to devise his property to Jill, regardless of their status during the ninety days, whether divorced, separated or happily cohabiting.

The appellant argues that, if the trial court is correct, no specific performance of a contract to make a will could ever be ordered against a personal representative because of the death of the obligor before performance. This position is incorrect, as there could easily be performance by the obligee which would require performance by the personal representative. Here, we agree with the Chancellor that there was no performance by the obligee which requires performance by the personal representative.

In chancery cases, we review the record de novo, but we will not reverse the findings of the Chancellor unless they are clearly erroneous or against the preponderance of the evidence, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Ark. Rules of Civil Proc., Rule 52; *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W. 2d 404 (1981); *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W. 2d 465 (1979).

We have considered the arguments advanced by appellant as to enforcing the agreement, and the allegations as to errors committed in the trial court proceedings, but we find them to be without merit. We cannot say that the findings of the Chancellor are against a preponderance of the evidence, or that they are clearly erroneous, or that equity dictates a

different result following *de novo* review by this Court, and therefore, we affirm.

Affirmed.

CRACRAFT, CLONINGER, and CORBIN, JJ., dissent.

DONALD L. CORBIN, Judge, dissenting. I must respectfully dissent to the majority opinion. To pursue the reasoning of the majority in the instant case requires remarkable imagination or an exercise in mental gymnastics that is mind-boggling to behold.

The learned trial court seemed to preface his remarks with an indication that John DaCosse would have been successful in his original divorce action. This was never litigated because of the reconciliation of the parties. One cannot speculate on the success or failure of this litigation. The trial court viewed this reconciliation agreement as a two-phase agreement, the first phase being what would happen on January 18, 1979. Under the first phase, Jill obtained what she bargained for, to wit: a halt of the divorce proceeding, a resumption of living together with John, and the possibility of receiving a will naming her as sole beneficiary of John's estate at some point in the future, not later than April 18, 1979, plus the right to keep her half of the savings account money in her name until she got the will. John got what he bargained for; he was restored to sole ownership of the property and resumption of living together with Jill and in order to get this he was willing to obligate himself to make a will 90 days hence or sooner if he desired.

The second phase called for John to make a new will leaving everything to Jill and for Jill to transfer her money back into joint ownership. Because of John's death, he did not perform.

The majority agreed with the trial court's reasoning that: Jill, by entering into the reconciliation agreement took a calculated risk as it pertains to the property, the risk being that she and John would both live for 90 days after

reconciliation and would live in harmony for that period of time.

Jill kept her part of the contract. There is nothing in the record to reflect that she or John placed a condition precedent (that either must live until April 18, 1979) in the contract. Nor is there any evidence that the parties did not "live in harmony" during the interval between the execution of the agreement and John's death. In fact, the contract specifically stated, "By entering into this agreement and the resumption of their cohabitation, husband and wife are not providing for a trial reconciliation but a reconciliation in the full sense of the word."

While I believe specific performance is the better remedy, *Loveless* v. *Diehl*, 236 Ark. 129, 364 S.W. 2d 317 (1963), the doctrine of unjust enrichment would just as easily apply. In *Little Rock Municipal Airport Commission* v. *Arkansas Valley Compress and Warehouse Co.*, 224 Ark. 1018, 277 S.W. 2d 836, this Court discussed the doctrine of unjust enrichment and said, in part:

> The basis of the right to recover is that the defendant has been unjustly enriched at the expense of the plaintiff, and that plaintiff is entitled to restitution therefor.

Appellant should be restored to the position which she occupied immediately prior to the execution of the Reconciliation Agreement.

The finding here is completely inequitable, harsh, unjust and unfair. The least that should be done if both specific performance and unjust enrichment remedies are not followed would be to allow Jill to sue for damages for breach of contract. The measure of damages being the value of one half of the property which was to come to appellant.

In 17A C.J.S. *Contracts* § 338 (1963), it is said:

> They (the Courts) are disinclined to construe stipulations in a contract as conditions precedent,

unless compelled to do so by language of the contract plainly expressed, particularly where so to do would result in injustice. Thus a condition precedent may not be implied when it might have been seen and provided for by express agreement.

I see no difference here between a 90-day provision to write a will and a promise to write a will before the promissor dies. It could just as readily be construed that the 90-day period here was provided in order to give the decedent time to have a will properly drawn; and perhaps a time frame to provide the appellant with an opportunity to bring a specific performance action against the decedent had he lived and failed to execute a will at the end of 90 days. This seems more reasonable to me. Under an indefinite time period involving a contract to make a will, there can be no breach until the promissor dies; consequently no action would lie until that time.

I am authorized to state that Judges Cracraft and Cloninger concur with this dissenting opinion; but Judge Cracraft would reverse and remand with directions to enforce specific performance.