BRANDON J. HARRISON, Judge
This appeal asks whether Jeff Phillips presented sufficient evidence during a bench trial to repel Jewell Edward Denton's motion to dismiss Phillips's unjust-enrichment claim. He did. We therefore hold that the circuit court erred by granting Denton's motion, which came after Phillips had rested his case. The circuit court's decision is reversed and the case remanded for further proceedings.
I.
Jeff and Susie Phillips, and Jewell (J.E.) and Vallalee (Val) Denton, lived in separate mobile homes on a piece of land outside Rogers, Arkansas. J.E. is Susie's father. Susie and her mother, Val, have since passed away. Jeff Phillips and J.E. Denton were related to each other by marriage (son-in-law and father-in-law). There was no evidence that a probate proceeding had ever been opened related to Susie's and Val's estates.
In April 2016, the property was the focus of litigation. Phillips filed a complaint in circuit court alleging that he was entitled to an undivided one-half interest in the land. He raised four claims: (1) breach of contract, (2) fraud, (3) promissory estoppel, and (4) unjust enrichment. Phillips also asked the court to declare that the Dentons had conveyed at least a one-half interest in the property to him and Susie and that Susie's interest passed to him through intestate succession. Phillips has abandoned all claims except unjust enrichment.
The case was tried to the circuit court in February 2017. A summary of the testimony goes like this. According to Phillips, he, Susie, and her parents (J.E. and Val) agreed to jointly purchase a parcel of land *510 located at 12761 Douglas Lane in Rogers, Arkansas. Phillips said that he and Susie did not have sufficient credit to obtain financing to buy the land, so the parties agreed that J.E. and Val would finance the property. In turn, Phillips and Susie would make payments directly to J.E. and Val for one-half of the promissory note. It was a "handshake" agreement-the common goal being that each family would get to buy land on which to place a mobile home. Phillips said the agreement was that each couple would pay half of each note payment, although there might be some months when someone would need to shoulder more of the financial load. In the end, each couple would own half of the property.
First National Bank and Trust Company financed the property on 12 October 1995. The contract sales price was $35,000. The fifteen-year promissory note reflects that the bank financed $28,000 at an annual interest rate of 10.259%. The monthly payments were $305.34. The total amount to be paid was $54,961.20. The promissory note and the related warranty deed show J.E. and Val as the promisors and grantees.
Both families moved mobile homes onto the property near one another. Susie passed away a few months later, in February 1996, but Phillips continued to make monthly payments to the Dentons. At trial, Phillips presented three receipt booklets as evidence of the monthly payments. The receipts track the length of the promissory note from October 1995 to December 2010 and are numbered sequentially in the three receipt booklets. Most receipt amounts are between $150 and $320; a few are as low as $50, some as high as $1200. Phillips told the court that when one couple or person struggled financially then the other couple or person would cover all or part of the note payment. The deficit would then be made up later. Phillips said that he was not concerned that it was only Val and J.E.'s names on the promissory note because he trusted them. He would pay Val and J.E., and they would make the mortgage payments. A number of receipts recite the words "purchase of land J. Phillips," "Pmt. on land," "land pmt." or "on land." The total value of the signed receipts is approximately $25,000. About $3,000 worth of additional receipt stubs do not contain signatures.
Phillips testified that J.E. informed him that the mortgage had been paid off in 2010, that he no longer needed to pay on the property, and that J.E. gave him the receipt booklets for the payments Phillips had made. No payments have been made since December 2010. Phillips testified during the trial that J.E. informed him that he wanted to sell the land, move closer to his children in Kansas, and had placed a "for sale" sign on the property in April 2016. J.E. refused to partition the property or promise to give Phillips one-half of the sale proceeds.
J.E. testified as an adverse witness during Phillips's case-in-chief. J.E. acknowledged that Phillips had lived on the property since 1995. J.E. contended that all the payments Phillips had made were to Val. J.E. said that he never wrote a receipt, that Val was the one who wrote and signed them, and that he knew Phillips was giving Val money for the land. He said that he did not sign the receipts with the signature "J.E. Denton." J.E. denied having a "deal" with Phillips but acknowledged that Susie and Val had a "deal." J.E. could not explain why Phillips had paid him. Phillips did not owe him money for any obligation, nor for any improvements related to the land. He also said that he was the one who gave Phillips the receipt booklets and stubs and that Phillips *511 did not contribute toward real-estate property tax on the land.
Phillips then rested his case. The circuit court granted Denton's motion to dismiss, finding that a
constructive trust may be implied if the trustee, in this case Mr. Denton, acquired legal title to the detriment of Mr. Phillips through actual fraud, constructive fraud, violation of a confidential relationship or fiduciary relationship, duress, mistake, undue influence, or any other questionable means. There was no evidence presented to this Court as to any fraud, actual fraud, confidential relationship, duress, or mistake or undue influence clearly not rising to the level of standard of proof in this matter, which is clear and convincing evidence.
[Unjust enrichment] will support the imposition of a constructive trust even in the absence of fraud or constructive fraud if the Court finds that the trustee, in this case Mr. Denton, is holding the property for the beneficiary Mr. Phillips. This burden of proof is also clear and convincing evidence. This Court finds that there is no clear and convincing evidence that Mr. Denton was holding the property for Mr. Phillips. Mr. Phillips himself testified that they purchased the land together. No facts to support that the land was to be conveyed to Phillips after some condition was satisfied or met. Therefore, the defendant's motion for directed verdict is granted.
The circuit court entered a written order that dismissed all of Phillips's claims with prejudice. Phillips appealed and asks to have his unjust-enrichment claim reinstated.
II.
In a civil bench trial, we treat a defendant's motion for "directed verdict" as a motion to dismiss. Rymor Builders, Inc. v. Tanglewood Plumbing Co. , 100 Ark. App. 141, 265 S.W.3d 151 (2007). When deciding a motion to dismiss after the plaintiff rests his or her case during a bench trial, the circuit court must decide "whether, if it were a jury trial, the evidence would be sufficient to present to the jury." Id. at 145, 265 S.W.3d at 153. If the nonmoving party has made a prima facie case on its claim, then the fact-finder must resolve the fully presented case on the merits. Id. When evaluating whether the evidence is substantial enough to make a question for the fact-finder, however, the circuit court may not assess the witnesses' credibility. Id.
An unjust-enrichment claim has legs when a person has received money (or its equivalent) under circumstances that, in equity and good conscience, he or she ought not to retain. Hatchell v. Wren , 363 Ark. 107, 117, 211 S.W.3d 516, 522 (2005) (internal citations omitted). The claimant's burden is to "produce evidence permitting at least a reasonable approximation of the amount of the wrongful gain ... the claimant's burden of proof, so described, is ordinarily met as soon as the claimant presents a coherent theory of recovery in unjust enrichment." Hartness v. Nuckles , 2015 Ark. 444, at 8, 475 S.W.3d 558, 564 (citing Restatement (Third) of Restitution and Unjust Enrichment § 51, cmt. i (2011)). Unjust enrichment can be inferred from the conduct, circumstances, and relationship of the parties. See Stokes v. Stokes , 2016 Ark. 182, 491 S.W.3d 113. The unjust-enrichment doctrine is protean, taking on whatever form is required to right a wrong and do justice. See, e.g. , Dews v. Halliburton Indus., Inc. , 288 Ark. 532, 536, 708 S.W.2d 67, 69 (1986) ; Little Rock Mun. Airport Comm'n v. Ark. Valley Compress & Ware. Co. , 224 Ark. 1018, 277 S.W.2d 836 (1955) (doctrine is liberally applied).
*512 We believe the circuit court put the cart before the horse in some sense by concentrating on the remedy facet of unjust enrichment rather than on whether Phillips had proved his case sufficiently to defeat a motion to dismiss raised at the end of his proof. The focus on a constructive trust during the motion-related colloquy makes the point. In any event, a claimant seeking restitution for unjust enrichment can generally recover the value of the benefit conferred upon the party unjustly enriched. See Sanders v. Bradley Cty. Human Servs. Pub. Facilities Bd. , 330 Ark. 675, 956 S.W.2d 187 (1997). A constructive trust is only one of several remedies available. Under Arkansas law, a constructive trust is available when an unjust enrichment demands relief, and the legal relief in the form of money is not adequate or, more precisely, is not as adequate as a constructive trust. See Howard W. Brill, Equity and the Restitutionary Remedies: Constructive Trust, Equitable Lien, and Subrogation , 1992 Ark. L. Notes 1, 5 (1992) (citing cases). But money can be awarded if the circumstances warrant.
III.
We hold that Phillips is correct: the circuit court erred when it granted Denton's motion to dismiss because Phillips established the required prima facie case that Denton would be unjustly enriched absent some remedy. Viewing the facts in the light most favorable to Phillips-as our standard of review requires us to do-sufficient evidence supports his claim such that the court should not have granted the motion to dismiss. For example, Phillips presented evidence of an oral agreement, dating back to 1995, between him and his deceased wife, and the Dentons, to buy land together on which to place the two couples' separate mobile homes. Part of the terms was that each couple pay one-half of the only mortgage taken out on the land. Phillips provided evidence that he had paid $25,000-$28,000 over a fifteen-year period (1995-2010), in monthly installments. This amount is approximately one-half of the $54,961 promissory note. For his part, J.E. did not dispute that Phillips consistently paid money to the Dentons, for fifteen years. And he admitted that he gave Phillips the receipt booklets for those payments. Coincidentally, Phillips's monthly payments stopped when there was a satisfaction and release of the mortgage. J.E. also denied that the money Phillips paid was for any other obligation.
Substantial evidence was presented on the points that permitting J.E. to keep the money that Phillips had paid and to also receive legal title to the property, without a partition, could unjustly enrich J.E. Substantial evidence also existed to put to the fact-finder the question whether a confidential relationship existed between J.E. and Phillips. For these reasons, the circuit court erred in dismissing the case, on J.E.'s motion, at the close of Phillips's proof. The dismissal of Phillips's unjust-enrichment claim is reversed and the case remanded for further proceedings.
Reversed and remanded.
Gruber, C.J., and Glover, J., agree.