Phyllis June BROWN *v.* Billy Earl BROWN

97-646                                              962 S.W.2d 810

Supreme Court of Arkansas
Opinion delivered March 12, 1998

*J. Patrick McCarty*, for appellant.

*Rex W. Chronister*, for appellee.

ROBERT L. BROWN, Justice. This appeal involves the distribution of a pension between divorced spouses. Appellant, Billy Brown, and appellee, Phyllis Brown, were married in 1951. In April 1981, Phyllis Brown began working at Hiram Walker & Sons, Inc., in Fort Smith, and the following year, she began to participate in the business's retirement plan. On March 17, 1988, the couple separated, and they were eventually divorced on June 20, 1989. The divorce decree contained the following provision:

> The Defendant (Phyllis Brown) has currently obtained an interest in a pension and savings plan through her employment at Hiram Walker. That the Defendant has been employed with this employer since April 20, 1981. The court finds that the Plaintiff (Billy Brown) shall have a one half interest in those pension and profit sharing benefits up to March 17, 1988.

There were, in fact, two pensions involved in the Browns' divorce decree. Billy Brown's military pension was also divided, with Phyllis Brown being awarded a one-half marital interest in ninety percent of his pension. The Arkansas Court of Appeals later held that her marital share included any postdecretal cost-of-living increases which enhanced the amount of Billy Brown's pension. *Brown v. Brown* 38 Ark. App. 99, 828 S.W.2d 601 (1992).

Phyllis Brown continued to work at Hiram Walker until she retired in January 1996 at age 63. At that time, she began to draw retirement benefits in the amount of $978.72. That same year, her former husband filed this action in chancery court, seeking an accounting and a contempt order against her for failing to pay him the correct share of her pension benefits and refusing to provide him with information of what his share should be.

Phyllis Brown answered, and after receiving briefs and supporting documents, the chancellor ultimately made several findings in a modified order:

- that at the time of the divorce Phyllis Brown had accrued benefits in her retirement account in an amount which would allow her to receive approximately $414.00 per month if she continued to work at her current rate of pay until she retired on the normal retirement date of December 1, 1997;
- that between March 17, 1988, and the date she retired on January 1, 1996, Phyllis Brown received periodic merit increases in her monthly salary totaling $775.00;
- that these salary increases had the effect of raising her retirement benefits from $414.00 to $978.72 per month;
- that Phyllis Brown retired from Hiram Walker on January 1, 1996, and began drawing retirement benefits in the amount of $978.72 per month.

The chancellor initially concluded that even though the 1989 divorce decree was drafted by Billy Brown's attorney, there was no merit to Phyllis Brown's argument that the decree should be interpreted strictly against her former spouse. He next considered Phyllis Brown's postmarital enhancement argument that Billy Brown should not benefit from any increases in her salary following their separation. On this point, he concluded that *Askins v. Askins*, 288 Ark. 333, 704 S.W.2d 632 (1986), was controlling and that all postmarital appreciation in benefits, including the salary increases, should be included for purposes of determining Billy Brown's share in her pension. Accordingly, he awarded Billy Brown a share in her benefits of $978.72 per month.

On appeal, Phyllis Brown first contends that the divorce decree is subject to two interpretations and should be construed against the party under whose auspices the decree was drafted — in this case, Billy Brown. She cites cases to support her contention, but all of the cases she references involve the interpretation of a contract as opposed to a divorce decree. *See Elcare, Inc. v. Gocio*, 267 Ark. 605, 593 S.W.2d 159 (1980) (interpreting a sales contract and a "Care Agreement"); *Sutton v. Sutton*, 28 Ark. App. 165, 771 S.W.2d 791 (1989) (interpreting a separation agreement); *DaCosse v. Ahrens*, 2 Ark. App. 61, 616 S.W.2d 777

(1981) (interpreting a "Reconciliation Agreement"). We agree with the chancellor that this argument is without merit. Divorce decrees are not contracts but are orders of the chancery court. Moreover, the decree did not specify the method to be used in calculating the appropriate shares of Phyllis Brown's pension. Hence, it was left to the chancellor to make that determination by subsequent order, which was done in this case.

Phyllis Brown's second argument is that the chancellor erred in concluding that *Askins v. Askins, supra,* required the chancellor to include postmarital appreciation for purposes of calculating Billy Brown's share in the pension. In the alternative, she urges that if we decide that the *Askins* case mandates such a ruling, we reconsider our decision in that case.

We have previously held that pensions are marital property and subject to distribution as such. *Askins v. Askins, supra; Young v. Young,* 288 Ark. 33, 701 S.W.2d 369 (1986). In the instant case, a marital percentage was arrived at by using a numerator/denominator formula. Specifically, Phyllis Brown worked for 70 months while she was married to Billy Brown before separation and for a total time of 164 months, which included her years of marriage before separation and the following months until her retirement as well. This results in a fraction of 70/164 or 42.68% of her pension that was earned prior to separation. Billy Brown was entitled to a pension share based on one-half of the 42.68%, which is 21.34%. Both parties agree that this is the appropriate marital percentage to be applied.

The question for this court to decide is whether Billy Brown is entitled to one-half of Phyllis Brown's accrued pension amount at time of separation on March 17, 1988, or 21.34% of the accrued pension amount, which is based in part on salary enhancements, in 1996.[1] The precise issue is whether Billy Brown is entitled to benefit from any postmarital salary raises, when he did not begin receiving his pension share until Phyllis Brown actually retired some seven years after their divorce.

---

[1] Phyllis Brown concedes in her brief in this appeal that the proper cutoff date for Billy Brown probably should have been the date of divorce, but the chancellor used the date of separation in his order and that is not an issue before us in this appeal.

The chancellor clearly agreed with Billy Brown that he was entitled to base his pension share on the entire pension actually received by his former spouse, beginning January 1, 1996. Phyllis Brown counters that his marital share should only apply to the pension amount that she had earned at the time of their separation. She contends that the reason for this is any postmarital enhancements after that date should not be considered marital property because they were solely the result of her efforts. The amount of her pension against which the marital percentage of 21.34% should apply, according to Phyllis Brown, is $414.00 as ·opposed to $978.72.

We perceive the friction in this area to be the result of two competing principles of equitable distribution. On the one hand, there is the principle which Phyllis Brown espouses that all property acquired after divorce (or separation in this case) should not be part of the marital-property mix. On the other hand, there is the principle subscribed to by Billy Brown that both parties are entitled to increases in the value of marital property after divorce and before distribution, particularly when the divorced spouse does not begin receiving a share until some years after the divorce occurs.

██ ██ We believe, as the chancellor concluded, that the issue of postmarital enhancement in benefits has been fully answered by this court. In *Askins v. Askins, supra,* we declined to exclude postmarital appreciation from the amount of the pension to be divided between divorced spouses. There, we first questioned whether the issue was procedurally barred but went on to hold that the chancellor operated within his discretion in dividing the pension as marital property the way he did. In our decision, we relied on two primary considerations. First, we recognized the fact that enhancements to a retirement plan are often most dramatic in the later years, and we indicated that it might be inequitable to allow a person who had supported his or her spouse through the lean years to be deprived of those later rewards. Secondly, we underscored that the chancellor has considerable discretion to divide marital property other than one-half to each party when it is equitable to do so. *See* Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 1993). Those two principles guide us in

affirming the chancellor in the case before us, and we note that other jurisdictions have reached the same conclusion. *See, e.g., In re Marriage of Hunt,* 909 P.2d 525 (Colo. 1995); *Stoerkel v. Stoerkel,* 711 S.W.2d 594 (Mo. Ct. App. 1986); *Gemma v. Gemma,* 778 P.2d 429 (Nev. 1989). *See also Hare v. Hodgins,* 586 So.2d 118 (La. 1991) (approving the *Askins* approach while allowing for exclusion in certain cases).

We are aware that there is a dispute in this case over the nature of Phyllis Brown's postmarital salary increases. She contends that the seven salary increases following her separation were all merit increases. In support of her position, she points to her employer's notices which describe the increases as "merit" increases. Merit increases, she maintains, should not be included to increase Billy Brown's share, and she cites a case from the Louisiana Supreme Court as authority to support her argument. *See, e.g., Hare v. Hodgins, supra.* Billy Brown answers this argument by stating that in spite of the description on the notices, these were, in fact, little more than cost-of-living or longevity increases. He adds that the chancellor did find in his modified order that these were *merit* increases but declined to exclude them as improper enhancements.

We defer to the chancellor in this regard. Here, he considered the increases in Phyllis Brown's salary following the separation and divorce and decided that they constituted legitimate adjustments for retirement benefits in which Billy Brown could participate. We made it crystal clear in *Askins* that this is the chancellor's call under § 9-12-315(a)(1)(A), as is the case with all divisions of marital property. We do not read the chancellor's order in the instant case to say that the *Askins* case divested him of all discretion in this area.

Affirmed.