Roy Allen SKELTON  *v.* Kathy Diane SKELTON

99-152                                                   5 S.W. 3d 2

Supreme Court of Arkansas
Opinion delivered November 18, 1999

*Pettus Law Firm*, by: *Donna C. Pettus* and *E. Lamar Pettus*, for appellant.

*Smith Law Firm*, by: *Donna Hayden Lyles*, for appellee.

R AY THORNTON, Justice. This appeal arises out of a divorce action and involves the distribution of a pension plan and disability benefits as marital property. Appellant raises three points on appeal. First, he argues that the trial court erred in including his fireman's pension as marital property for distribution purposes. Second, he argues that Ark. Code Ann. § 9-12-315 (Repl. 1998), either by itself or in combination with Administrative Order No. 10: Arkansas Child Support Guidelines, violates the Equal Protection Clause of the Fourteenth Amendment. Third, he argues that the chancellor did not err in exempting his disability benefits from marital property. We affirm the trial court.

Roy Skelton and Kathy Skelton were married on September 6, 1974. At the time of the marriage, Mr. Skelton had been working for the Fayetteville Fire Department for approximately eight years. Ms. Skelton filed for divorce on May 5, 1998. The divorce hearing was held on October 14, 1998. The parties had settled all issues except the division of Mr. Skelton's fireman's pension.

The Fireman's Relief and Pension Fund is a retirement program established under Ark. Code Ann. § 24-11-101 (Repl. 1996), and allowed by federal law. Under the rules of the pension fund, Mr. Skelton was prohibited from making contributions to or paying taxes for social security based upon his employment by the city. Although Mr. Skelton is ineligible for social security benefits, he is covered under the Fayetteville Firefighters Pension Fund.

Mr. Skelton retired from the fire department after twenty-three years and four months of service. At the time of his retirement, a fireman could retire at fifty percent of his regular salary plus twenty dollars per month for each year served beyond the twentieth year of service. If retirement resulted from a disability, the disability benefit was an additional fifteen percent of the fireman's regular salary. In January 1990, Mr. Skelton was awarded regular retirement benefits in the gross amount of $1,264.63 per month. The City of Fayetteville contested Mr. Skelton's entitlement to disability retirement, and on January 31, 1991, the circuit court of Washington County found that Mr. Skelton was entitled to continue to receive disability benefits as a result of a service-related, line-of-duty disability resulting from an anxiety disorder. Since February 15, 1990, Mr. Skelton has received $1,264.63 in regular retirement and

$361.38 in disability retirement for a total monthly benefit of $1,626.01. Mr. Skelton still receives these benefits.

Arkansas follows the well-established rule that retirement benefits earned during marriage are considered marital property. *See Day v. Day*, 281 Ark. 261, 663 S.W.2d 374 (1986); *Meinholz v. Meinholz*, 283 Ark. 509, 678 S.W.2d 348 (1984). Based upon the reasoning of *Allard v. Allard*, 708 A.2d 554 (R.I. 1998), the trial court treated Mr. Skelton's retirement plan as a marital asset under Arkansas's equitable-distribution statute. The chancery court determined that Mr. Skelton's pension was marital property and awarded Ms. Skelton $417.80 per month, or one-half of that portion of Mr. Skelton's gross regular retirement monthly benefit that resulted from contributions to the plan during the marriage. The chancellor declined to award Ms. Skelton any portion of the retirement benefits that was awarded for Mr. Skelton's line-of-duty disability. We note that $417.80 per month is approximately twenty-six percent of Mr. Skelton's monthly gross retirement benefit of $1,626.01.

Congress has excluded from its definition of marital property any benefits from social security. The Social Security Act provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407 (a) (1994). The United States Supreme Court has adopted the position that this section imposes "a broad bar against the use of any legal process to reach all social security benefits." *Philpott v. Essex County Welfare Bd.*, 409 U.S.413 (1973). We held that the attempt to make future assignment of one spouse's social security benefits was preempted by the provisions of 42 U.S.C. § 407 (a) in *Gentry v. Gentry*, 327 Ark. 266, 938 S.W.2d 231 (1997).

We first address the question of whether contractual retirement plans that replace social security benefits should be exempted from marital property. The courts are sharply divided on this point. Florida, North Dakota, Utah, West Virginia, Wisconsin, Connecticut, Minnesota, and Rhode Island take the majority view, holding

that retirement plans that replace social security benefits are included in marital property distribution. *See Jefferies v. Jefferies*, 895 P.2d 835 (Utah Ct. App. 1995); *Loudermilk v. Loudermilk*, 397 S.E.2d 905 (W. Va. 1990); *Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989); *Mack v. Mack*, 323 N.W.2d 153 (Wis. Ct. App. 1982) .

Pennsylvania and Ohio take the minority view, allowing social security replacement plans to be exempt from marital property. *See Cohenour v. Cohenour*, 696 A.2d 201 (Pa. 1997); *McClain v. McClain*, 693 A.2d 1355 (Pa. 1997); *Walker v. Walker*, 677 N.E.2d 1252 (Ohio 1996); *Endy v. Endy*, 603 A.2d 641 (Pa. 1992); *Schneeman v. Schneeman*, 615 A.2d 1369 (Pa. 1992); *Cornbleth v. Cornbleth*, 580 A.2d 369 (Pa. 1990).

Mr. Skelton relies heavily upon *Cornbleth, supra*, in which the court held that the part of the husband's pension that was considered to be in lieu of social security benefits was exempted from the marital estate. The *Cornbleth* case stands for the proposition that once a social security replacement plan becomes a part of the marital estate, "there will be no Social Security benefit waiting to cushion this financial pitfall." *Id*. The *Cornbleth* court, relying solely upon Pennsylvania law, sought to balance the equities between the husband and the wife, who both had pension plans.

We recognize that Mr. Skelton appears to be placed at a disadvantage because he was prohibited from contributing to social security under his fireman's pension plan; however, the minority view on which he relies does not take into account the fundamental difference between social security and pension plans. A Florida court makes this distinction in *Johnson v. Johnson*, 726 So. 2d 393 (Fla. Dist. Ct. App. 1999). Florida's equitable distribution statute provides that "[a]ll vested and non-vested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution." Fla. Stat. Ann. § 61.076(1) (West 1997). In *Johnson*, the court held that the husband's social security replacement plan was a marital asset. *Id*. The *Johnson* court, persuaded by the decision in *Mack v. Mack, supra*, further reasoned that social security replacement pension plans were not so similar to federal social security benefits as to render them exempt from the Florida statutes.

In the *Mack* case, the Wisconsin Court of Appeals provided the following rationale:

> Although an employee's social security account increases in relative value over his working life, social security is not a property like a pension. It is a system of social insurance. 'To engraft upon the social security system a concept of accrued property rights would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands.'

*Id.* (*citing Flemming v. Nestor*, 363 U.S. 603 (1960)).

■ Since the courts are divided on this issue, we further examine the purposes behind social security benefits and pension plans. In the United States Supreme Court case of *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), a railroad-benefits case, the Court discussed the contractual nature of pension plans *vis-à-vis* the noncontractual nature of social security. Writing for the majority, Justice Blackmun states:

> Like Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time. This vulnerability to congressional edict contrasts strongly with the protection Congress has afforded recipients from creditors, tax gatherers, and all those who would 'anticipate' the receipt of benefits....

*Id.* The possibility of changes in benefits is expressly stated in the Social Security Act: "The right to alter, amend, or repeal any provision of this [Act] is reserved to Congress." 42 U.S.C. § 1304 (1994). This language emphasizes the difference between social security benefits and pension plans. As the *Mack* case points out, social security benefits are a type of public welfare, or social insurance. Social security benefits provide revenue or income; however, social security is not contractual in nature and does not become a property interest. It is subject to change by congressional act at any time.

■ According to *Hisquierdo*, most private pension plans are contractual agreements between the employer and employee. In Mr. Skelton's case, the contributions to his pension plan were made during the marriage and became a property interest during the marriage. *See* Ark. Code Ann. § 9-12-315; *Day, supra.* Mr. Skelton's pension was not designed to replace noncontractual social

security benefits; rather, it provided a pension benefit which exceeded that of the social security system. We note that Ms. Skelton, by foregoing compensation which would otherwise have been received during marriage, contributed indirectly to the pension plan. Because the purposes of social security and the retirement plan are fundamentally different, they are not interchangeable. Therefore, we affirm the trial court on this issue.

In his second point on appeal, Mr. Skelton argues that Ark. Code Ann. § 9-12-315 and the administrative order governing child support violate his rights to equal protection. He asserts that an impermissible classification exists between state employees who must forfeit social security benefits and those employees who do not. He expressly asserts "that there is no rational basis for depriving one class of individuals of two-thirds of their retirement pay when the statute allows one-half to be taken as marital property and another one-third for child support." As we have previously stated, Ms. Skelton's award of $417.80 per month is approximately twenty-six percent of Mr. Skelton's pension benefits. After the deductions of Ms. Skelton's award of $417.80 per month of the pension and an award of $340.00 per month for child support, Mr. Skelton still retains $868.21 per month of his $1626.01 in pension benefits. The assertion that he is deprived of two-thirds of his retirement pay is not true.

All doubts pertaining to a statute in question are resolved in favor of constitutionality. *Arnold v. Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991). Where a constitutional construction is possible, we are compelled to uphold the validity of the statute under attack. *Id.* We have previously addressed the constitutionality of Ark. Code Ann. § 9-12-315 in *Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994). In *Hamilton*, an elective share case, we held that this statute does not violate the Equal Protection Clause, either facially or as applied. *Id.* We declined to strike down Ark. Code Ann. § 9-12-315 because we could easily discern a rational basis behind the General Assembly's handling of the class of spouses disputing the division of property. *Id.* We also noted that any effort to amend the treatment of the class is more appropriately addressed to the General Assembly. *Id.* Similarly, Ark. Code Ann. § 9-12-315 is not violative of the Equal Protection Clause in this case.

■ Mr. Skelton argues that Ark. Code Ann. § 9–12–315 (Repl. 1998) is unconstitutional as applied to the classification of his pension plan as marital property. We disagree. Mr. Skelton correctly cites the rational basis test for an equal protection challenge to a statute, as established in *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998) and *Arkansas Hosp. Ass'n. v. Arkansas State Bd. of Pharmacy*, 297 Ark. 454, 763 S.W.2d 73 (1989). The burden to prove the unconstitutionality of the statute was upon Mr. Skelton. *See Citizens Bank v. Estate of Pettyjohn*, 282 Ark. 222, 667 S.W.2d 657 (1984). Mr. Skelton correctly states that he has the burden of proving that the act is not rationally related to achieving any legitimate objective of state government under any reasonably conceivable state of facts. *See Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983).

■ Mr. Skelton's argument fails because he does not meet this burden. In determining whether a statute violates equal protection principles, we consider several factors: (1) the character of the classification; (2) the individual interests asserted in support of the classification; and (3) the governmental interests asserted in support of the classification. *See Arnold, supra; In the Matter of the Estate of Epperson*, 284 Ark. 35, 679 S.W.2d 792 (1984). The Equal Protection Clause does not preclude all statutory classifications. Indeed, statutory classifications which have a rational basis and are reasonably related to the purpose of the statute are permissible. *See Urrey Ceramic Tile Co. v. Mosley*, 304 Ark. 711, 805 S.W.2d 54 (1991).

■ On the first and second factors, Mr. Skelton mischaracterizes his pension plan as a replacement for social security. Social security benefits are based upon computations that consider age, retirement status, including the amount of outside income, adjusted for cost-of-living increases, and many other factors. By contrast, Mr. Skelton's pension provided for payment of fifty percent of his regular salary plus $20.00 per month for each year served beyond the twentieth year of service. We have noted that he is not deprived of two-thirds of his retirement pay, as he argues. Accordingly, Mr. Skelton is not disadvantaged, either individually or as a member of a class.

■ We have concluded that Ark. Code Ann. § 9–12–315 is rationally related to several legitimate governmental purposes,

one of which is to give marriage partners an equal share of pension benefits earned during the marriage. We have stated:

> [I]t is not our role to discover the actual basis for the legislation. Instead we are merely to consider whether any rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives, so that the legislation is not the product of utterly arbitrary and capricious government purpose and void of any hint of deliberate and lawful purpose.

*Streight, supra.* The statute recognizes that money earned during the marriage belongs to the partnership. It also recognizes that both spouses have contributed to the pension plan during the marriage and balances the distribution accordingly. There is a rational basis for the statutory determination that pension rights acquired during marriage should be treated as marital property. With regard to the allowance of child support, this benefit reflects his responsibility for the support of his minor children, and will end when they become adults. There is a rational basis for this treatment. Accordingly, we hold that Ark. Code Ann. § 9-12-315 and the Administrative Order do not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

In the last point on appeal, Ms. Skelton argues that disability benefits are marital property. On October 14, 1998, the trial court ruled that these monthly disability benefits are nonmarital property and shall remain the sole and separate property of Mr. Skelton. Mr. Skelton filed his notice of appeal on November 13, 1998. Pursuant to Ark. R. App. P.—Civ. 3 and 4, a notice of Ms. Skelton's cross-appeal was timely filed on November 19, 1998.

Arkansas exempted disability benefits from marital property in the 1987 amendment to Ark. Code Ann. § 9-12-315(b)(6) (Repl. 1998). The statute reads:

> (b) For the purposes of this section, "marital property" means all property acquired by either spouse subsequent to the marriage except:
>
> * * *
>
> (6) Benefits received or to be received from a ... personal injury claim . . . when those benefits are for any degree of permanent disability or future medical expenses....

*Id.* In *Clayton v. Clayton*, 297 Ark. 342, 760 S.W.2d 875 (1988), we emphasized that Act 676 of 1987 "excepted from marital property only those benefits from an unliquidated personal injury claim that would be for any degree of permanent disability or future medical expenses." We further stated that "the remaining benefits or elements of damage from one's personal injury claim are subject to division as marital property pursuant to Ark. Code Ann. § 9-12-315(a)(1)(A)." *Id.*

Later, in *Mason v. Mason*, 319 Ark. 722, 895 S.W.2d 513 (1995), we implemented a two-prong test to determine whether a claim as a "personal injury" satisfies the requirement for an exemption from marital property. First, the claim must be for a degree of permanent disability or future medical expenses. Second, the injury must be sustained while on the job or in consequence of a tortious act. In the *Mason* case, we held that Mr. Mason's claim for his physical condition did not constitute a claim for "personal injury" as contemplated by Ark. Code Ann. § 9-12-315(b)(6) because the ultimate source of his disability could be traced back to the wounds he suffered during World War II. *Id.* Mr. Mason's injury did not satisfy the second prong of the test, as it was a preexisting condition that was exacerbated by an on-the-job fall. Therefore, his disability benefits did not fall within the statutory marital-property exemption.

This case is distinguishable from *Mason*. Here, the question is whether Mr. Skelton's injury reflected a degree of permanent disability and whether it was job-related. We note that the Washington County Circuit Court's finding in 1991 that Mr. Skelton suffers from an anxiety disorder is not disputed. Approximately eight years after the issue of his disability was adjudicated, Mr. Skelton continues to be compensated for this disability. His continued compensation reflects that he still suffers a degree of permanent disability. Additionally, there is no dispute that the disability was job-related. On the basis of the evidence before the trial court, we do not find reversible error in the chancellor's determination that these disability benefits are not marital property. Accordingly, we affirm the decision of the trial court.

Affirmed.

CORBIN, J., concurring in part; dissenting in part.

D ONALD L. CORBIN, Justice, concurring in part; dissenting in part. I dissent because I believe that the chancellor failed to properly balance the equities in dividing the parties' marital property. The facts of this case demonstrate that during Roy Skelton's twenty-three-year employment with the Fayetteville Fire Department, he was required to and did contribute to the Fireman's Relief and Pension Fund established by the City of Fayetteville. The chancellor specifically found that Roy's contribution to the pension fund was in lieu of social security. The chancellor found further that Roy never made contributions to social security and is thus not entitled to receive social security benefits as a result of his employment with the city. In other words, Roy was essentially forced to give up his rights to collect social security benefits in exchange for his employment as a Fayetteville fireman, an arrangement that undoubtedly benefitted the city.

Despite the foregoing findings, the chancellor ruled that the entire pension, minus that earned prior to the marriage, was marital property. In so ruling, the chancellor refused to inquire whether and to what extent Kathy Skelton is entitled to receive social security benefits. In my opinion, this was error.

Although this is an issue of first impression, I believe that this court should adopt the approach used by the courts in Pennsylvania and Ohio. *See Neel v. Neel*, 680 N.E.2d 207 (Ohio App. 8 Dist. 1996); *Cohenour v. Cohenour*, 696 A.2d 201 (Pa. Super. 1997); *Schneeman v. Schneeman*, 615 A.2d 1369 (Pa. Super. 1992); *Endy v. Endy*, 603 A.2d 641 (Pa. Super. 1992); *Cornbleth v. Cornbleth*, 580 A.2d 369 (Pa. Super. 1990). Collectively, those cases hold that because social security benefits are exempted from marital property, a spouse who receives a pension but no social security benefits may be entitled to have exempted from the marital property that portion of the spouse's pension that might figuratively be considered in place of social security benefits. The rationale for this position is best stated in *Cornbleth*:

> One of our goals with regard to equitable distribution must be to treat different individuals with differing circumstances in a fashion so as to equate them to one another as nearly as possible, thus, eliminating a bias in favor of, or against, a class of individuals. To the extent individuals with Social Security benefits enjoy an exemption of that "asset" from equitable distribution we believe those individuals participating in the [civil service retirement programs] must, likewise, be so posi-

tioned. Consider for example an individual being divorced at approximately age fifty. Assuming a normal work history, that person will likely have accrued a substantial pension as well as a right to Social Security. When the pension is divided in equitable distribution there will be a diminution of the expected retirement income. However, the presence of Social Security will help offset the diminution. *In contrast, an individual who was a civil service participant for many years will, if the trial court's approach is approved, be dealt a double blow of sorts. The pension will become part of the marital estate and, thus, divided, yet there will be no Social Security benefit waiting to cushion this financial pitfall.*

580 A.2d at 371-72 (emphasis added).

Thus, in order to reach an equitable distribution of marital property, it is necessary to consider the individual spouses' eligibility for social security benefits. This does not, however, require the chancellor to automatically exempt the figurative social security benefits. Rather, it requires the chancellor to conduct an inquiry to determine whether such an exemption is equitable under the circumstances. *See McClain v. McClain*, 693 A.2d 1355 (Pa. Super. 1997) (holding that the husband was not entitled to set aside part of his federal pension benefits in lieu of social security benefits because the wife had no appreciable social security benefits of her own to balance against such a credit).

Chancery courts are courts of equity. The chancellor clearly has the power to divide marital property other than one-half to each party when it is equitable to do so. *See* Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 1998); *Brown v. Brown*, 332 Ark. 235, 962 S.W.2d 810 (1998); *Askins v. Askins*, 288 Ark. 333, 704 S.W.2d 632 (1986). Indeed, section 9-12-315(a)(1)(A)(iv) specifically allows the chancellor to consider the amount and sources of income for each party. In my opinion, this court should remand this case to the chancellor to determine the extent of Kathy's entitlement to social security benefits from her current full-time employment at Wal-Mart, as well as from any previous jobs she has held. Once that determination is made, the chancellor should fashion an equitable distribution of Roy's pension. To allow the chancellor to blindly view the entire pension as marital property is patently inequitable. For this reason, I dissent.

Additionally, I concur with the majority's holding that section 9-12-315 does not violate the Equal Protection Clause; however, I disagree with the analysis used to reach that conclusion. In my opinion, section 9-12-315 is not unconstitutional because it does not distinguish between those persons receiving social security retirement benefits and those receiving a retirement pension in lieu of social security benefits. In fact, the statute does not, on its face, exempt social security *retirement* benefits from marital property; rather, only those social security benefits paid for permanent disabilities and future medical expenses are exempted. This is evident from the language of the statute, which provides in pertinent part:

> (b) For the purpose of this section, "marital property" means all property acquired by either spouse subsequent to the marriage *except*:
>
> . . . .
>
> (6) Benefits received or to be received from a workers' compensation claim, personal injury claim, or social security claim *when those benefits are for any degree of permanent disability or future medical expenses*[.] [Emphasis added.]

Because there is no differential treatment of the two classes of persons, there can be no equal-protection violation. Moreover, Roy's disability benefits were exempted from the marital property by the chancellor. Thus, he cannot argue that he is being treated differently under the statute.

Roy also argues that section 9-12-315 in combination with this court's Administrative Order No. 10 is unconstitutional because his pension is deemed both marital property and income for purposes of child support. Though this argument is somewhat confusing, it appears to be premised on the notion that it is unfair to consider his pension benefits as both marital property and income. In this respect, the argument appears to be a duplication of that raised in the first point. If, however, Roy is arguing that the statute and administrative order exempt from the definition of income social security benefits, but not pension benefits, the argument is without merit. Both types of benefits are properly considered as income for purposes of determining child support. *See Gentry v. Gentry*, 327 Ark. 266, 938 S.W.2d 231 (1997) (recognizing that federal law allows social security benefits to be reached by a former

spouse for alimony or child support, but not for property division). Thus, true social security benefits are not any more exempt than pension benefits from the definition of income in determining child support.

In sum, section 9-12-315 does not afford protection to either "class" of persons, *i.e*, those receiving social security retirement benefits and those receiving pension benefits. As such, Roy's equal-protection argument is without merit. Moreover, section 9-12-315 and Administrative Order No. 10 are not unconstitutional, as they do not differentiate between those persons receiving true social security benefits and those receiving pension benefits in lieu of social security. Both classes of benefits may be viewed as income for purposes of determining child support. Accordingly, for the reasons herein stated, I concur in the result reached by the majority on this issue.

Concurring in part; dissenting in part.