Martha COLLINS *v.* Cornelius COLLINS

00-1412                                                    61 S.W.3d 818

Supreme Court of Arkansas
Opinion delivered December 13, 2001
[Petition for rehearing denied January 17, 2002.*]

---

* ARNOLD, C.J., and GLAZE and IMBER, J.J., would grant.

*Christopher C. Mercer, Jr.*, for appellant; *David O. Bowden*, of counsel.

*Jan Dewoody Scussel*, for appellee.

DONALD L. CORBIN, Justice. This is a domestic-relations case involving a dispute over whether funds obtained in conjunction with a settlement under the Federal Employers Liability Act ("FELA") are marital property for purposes of the marital-distribution statute. Appellant Martha Collins raises the following allegations of error on appeal: (1) the chancellor applied the wrong standard of proof in evaluating the evidence to determine whether the funds were marital property; and (2) the chancellor erred in awarding the entire FELA settlement to Appellee Cornelius Collins. This case was certified to us from the Arkansas Court of Appeals; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(6) and (d). We affirm.

The record reflects that the parties were married on August 1, 1969, and three children were born of that marriage. The parties separated on August 14, 1995, with Appellee filing a claim for divorce on December 21, 1995, in the Jefferson County Chancery Court. Appellant filed a cross-claim for divorce, and on June 13, 1996, a decree of divorce was entered granting Appellee an absolute divorce. During the divorce hearing, it was announced that the parties had entered into a property settlement agreement. As part of that agreement, Appellant was granted a fifty-percent interest in any proceeds awarded to Appellee as a result of his FELA claim, with the exception of those funds exempted under Ark. Code Ann. § 9-12-315(b)(6) (Repl. 1998). The property settlement agreement also provided that Appellee would notify Appellant prior to any settlement of the FELA claim.

After the parties separated, Appellee was injured in an accident that gave rise to his FELA claim. The accident occurred on October 2, while Appellee was employed as an engineer with Southern Pacific Transportation Company/Union Pacific Transportation Company ("the railroad"). Appellee was sitting in a locomotive awaiting orders when some runaway cars struck the locomotive, throwing him about the engine. He suffered immediate injuries to his back, neck, and shoulders and was taken to the emergency room at Jefferson Regional Hospital. Appellee was initially referred to physical therapy, but after his condition failed to improve, he sought the care of an orthopedic specialist, Dr. George Schoedinger. A CAT scan performed in February 1995, revealed that Appellee

suffered injuries to three different discs that required surgical intervention. Appellee underwent the first of three surgeries on April 1996, a diskectomy at L5/S1, which is at the belt level of the spine. Appellee underwent an anterior diskectomy and fusion at C3/4 and C4/5 in April 1997, after losing the use of his left arm. Finally, in April 1998, Appellee underwent an L5 fusion that resulted in the insertion of a titanium cage in his back.

Appellee was unable to return to work for the railroad following his accident. Prior to the accident, Appellee held two other jobs in addition to his job with the railroad. He owned and operated CK&M Bodyshop and was also an active member of the Arkansas National Guard. After the accident, Appellee was no longer able to manage the bodyshop and sold it to one of his employees in July 1997. Appellee was also honorably discharged from the National Guard because he was found to be physically unfit for continued service.

Appellee filed a FELA claim against the railroad in federal court in St. Louis, Missouri, alleging that he was injured as a result of his employer's negligence. He sought past and future damages for severe pain and suffering, medical care and attention, psychological and emotional injury, mental anguish and anxiety, and lost wages and benefits. A trial of the matter began on April 6, 1999, in St. Louis. Prior to the submission of any evidence, Appellee and the railroad reached an agreement to settle the matter. In exchange for releasing his employer from any claims of liability, Appellee was awarded a gross settlement of $742,000.00. The following amounts were immediately deducted from the settlement: $185,500.00, for attorney's fees; $52,310.46, for litigation expenses; $4,000.00, for any expenses incurred but not yet billed; $3,394.09, to repay the Railroad Retirement Board for previously paid disability benefits; and $1,400.00, for any uncovered medical expenses that will be returned to Appellee if not used. An additional $4,631.07 was added to the settlement amount for payment of certain work costs. Appellee also received a check for $14,856.85, to cover outstanding medical bills that he previously paid.[1]

---

[1] The chancellor erroneously states in his order that Appellee received several checks totaling $14,856.85 that were made payable to various medical providers. Although the check was made payable to Appellee, his uncontradicted testimony revealed that the $14,856.85, as well as the other checks issued to pay medical providers were never given to him, but rather were disbursed by his attorneys.

Appellee ultimately received a lump-sum payment of $480,787.18, in settlement of his FELA claim. This amount will increase to $505,426.32, if certain monies withheld for future costs are returned to Appellee. The chancellor ordered Appellee to deposit $240,393.59, an amount equal to one-half of the lump-sum payment, into a savings account in his name alone until a determination was made of what portion, if any, Appellant was entitled to under the property settlement agreement. A hearing on the matter was held on November 23, 1999, and continued until February 3, 2000. Appellant argued that she was entitled to one-half of the settlement proceeds, as they constituted marital property not exempted by section 9-12-315(b)(6). Appellee countered that Appellant was not entitled to any portion of the proceeds, as they were proceeds awarded for permanent disability, and thus were excepted from the definition of marital property.

The evidence presented to the chancellor included the testimony of three witnesses: Appellant, Appellee, and Freddie Lee Kelly, the purchaser of CM&K Bodyshop. Also admitted into evidence were numerous depositions of witnesses, ranging from medical experts to economics experts, including three depositions of Dr. Schoedinger. Other evidence included Appellant's extensive medical records, a transcript of the settlement hearing in the FELA claim, and the release and resignation signed by Appellee in the FELA case. The chancellor requested that the parties submit briefs and then took the matter under advisement.

The chancellor issued his findings of fact and conclusions of law on June 20, 2000. Therein, the chancellor stated that Appellee had the burden of rebutting the presumption that the proceeds were marital property by a preponderance of the evidence. After setting forth a summary of this court's most recent holdings in similar cases, the chancellor concluded that the evidence established that Appellee suffered a degree of permanent disability caused by his work-related injury. He also credited the findings of Dr. Edwin Wolfgram that Appellee suffers from major depressive disorder and that Appellant failed to rebut this opinion with any other evidence. Thus, the chancellor ruled that the settlement proceeds were not marital property and, therefore, not subject to division. An order reflecting the chancellor's findings was subsequently entered on July 11, 2000. From this order, comes the instant appeal.

██ It is well established that this court reviews chancery cases, including those involving the division of property, *de novo* on appeal. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001); *Box v.*

*Box*, 312 Ark. 550, 851 S.W.2d 437 (1993). We do not reverse a finding of fact made by the chancellor unless it is clearly erroneous. *Id.*; *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Pre-Paid Solutions, Inc. v. City of Little Rock*, 343 Ark. 317, 34 S.W.3d 360 (2001). We give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999).

## I. Quantum of Proof

For her first point on appeal, Appellant argues that the chancellor's findings were based on an erroneous standard of proof. Specifically, Appellant argues that the chancellor erroneously based his findings on a preponderance of the evidence, and that where a party seeks to prove that property is excepted from the definition of marital property, the quantum of proof required is that of clear and convincing evidence. Appellant relies on some cases from our court of appeals where the announced standard of proof was that of clear and convincing evidence. *See Jablonski v. Jablonski*, 71 Ark. App. 33, 25 S.W.3d 433 (2000); *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). Appellee argues that the cases relied on by Appellant are inapposite to the case at hand because those cases deal with situations where separate property has been co-mingled with marital property or title to the property is held in both spouses' names. We agree with Appellee.

While this court has held that clear and convincing evidence is required to rebut a presumption that property titled in both spouses' names is separate property, we have never addressed the standard of proof necessary to prove that funds are excepted from the definition of marital property. We are guided by the principle that the quantum of proof generally required in civil cases is that of preponderance of the evidence. *See Hess v. Treece*, 286 Ark. 434, 693 S.W.2d 792 (1985), *cert. denied*, 475 U.S. 1036 (1986); *McWilliams v. Neill*, 202 Ark. 1087, 155 S.W.2d 344 (1941)). Accordingly, we cannot say that it was error for the chancellor to weigh the evidence under a preponderance standard of proof.

## II. FELA Settlement Proceeds

We now turn to Appellant's argument that the chancellor erred in awarding the entire FELA settlement to Appellee as nonmarital property. Appellant contends that Appellee failed to present sufficient proof that the proceeds were awarded for a permanent disability or future medical expenses, and it was error for the chancellor to find that the entire settlement was excepted from the definition of marital property. Appellee argues that the chancellor's award was correct because the overwhelming evidence established that he suffered a permanent disability that resulted in the FELA settlement.

This court's treatment of disability payments in the context of martial division has varied over the years. In 1987, however, the General Assembly passed Act 676 of 1987, adding certain exceptions for benefits received in connection with a personal injury or worker's compensation claim to the definition of marital property. This act now codified at section 9-12-315(b) provides in relevant part:

> (b) For the purpose of this section, "marital property" means all property acquired by either spouse subsequent to the marriage except:
>
> . . . .
>
> (6) Benefits received or to be received from a workers' compensation claim, personal injury claim, or social security claim when those benefits are for any degree of permanent disability or future medical expenses [.]

The first case to apply this new exception was *Clayton v. Clayton*, 297 Ark. 342, 760 S.W.2d 875 (1988). At issue in *Clayton* was whether a spouse's unliquidated FELA claim constituted marital property. After recognizing that the statute did except certain benefits, including FELA claims, this court held that only that portion of such funds awarded for any degree of permanent disability or future medical expenses is excepted and that the remaining benefits are subject to division as marital property. The decision in *Clayton* is distinguishable from the situation now at hand. At the time the parties were divorced, negotiations had not yet begun on the husband's FELA claim, and this court refused to rule on any division of the claim, because the record was insufficient to determine what portion of the FELA benefits might constitute marital property.

Here, the record is replete with evidence regarding the nature of the husband's injuries, his inability to work, and even evidence from Appellee's FELA attorney regarding the strategy behind the pursuit of the FELA claim. Thus, we must determine if this evidence was sufficient to establish that the settlement proceeds were not subject to division as marital property.

A review of the record before this court reveals that Appellee submitted ample evidence to demonstrate that his settlement was awarded for a degree of permanent disability. At the outset, we recognize the long-standing principle that this court defers to the chancellor's credibility assessments. *McKay*, 340 Ark. 171, 8 S.W.3d 525. For purposes of clarity, we begin with a review of the medical evidence submitted in this case. This evidence consisted of a multitude of medical records, including records from Appellee's three surgeries and extensive physical therapy. There were also three depositions of Dr. Schoedinger admitted into evidence. During a deposition taken on October 2, 1995, Dr. Schoedinger opined within a reasonable degree of medical certainty that Appellee's injuries were attributable in whole or in part to his work-related accident. This opinion was reiterated in a January 13, 2000 deposition of Dr. Schoedinger who again opined that the accident caused Appellee's injuries that in turn required surgical intervention. Dr. Schoedinger also testified that Appellee was permanently disabled from doing the job of an engineer. This opinion was corroborated by another expert witness, Dr. Calvin Benton, a former medical director for Southern Pacific Railroad. Dr. Benton testified in a deposition for the FELA case that based upon a review of his medical records, Appellee was unable to return to work for the railroad.

Appellee also underwent two Functional Capacity Evaluations ("FCE"), performed by a physical therapist. The first FCE was an eight-hour assessment conducted after Appellee's first two surgeries on September 19, 1997. It revealed that Appellee had limited ability with regards to the amount of sitting, standing, and walking that he could endure. The therapist opined that Appellee could do some part-time work, building up to full-time work in the light-duty classification. A second FCE was conducted on October 16, 1998, and showed a marked reduction in his endurance, marked increase in his level of pain, and decreases in his strength. This time the therapist opined that Appellee would be unable to do full-time sedentary work, noting that his pain was too overpowering.

Dr. Schoedinger also referred Appellee to Wilbur Swearingin, a certified rehabilitation counselor. They met on three separate occasions. After reviewing Appellee's medical and psychiatric records, as well as the results of his FCE's, Swearingin testified in a deposition in the FELA case that he did not believe Appellee was able to work full time in October 1997. He further stated that he did not believe that he could offer Appellee any assistance to find other employment because of his medical situation.

In addition to this medical evidence, Appellee offered the deposition testimony and medical records of Dr. Edwin Wolfgram, his treating psychiatrist.[2] Dr. Wolfgram diagnosed Appellee as suffering from a single-episode major depressive disorder, chronic post traumatic stress disorder, and pain disorder. According to Dr. Wolfgram, Appellee was depressed because he was used to working sixteen to twenty hours per day but now could do nothing. He opined that Appellee was incapable of working in any consistent manner, and that his psychiatric conditions alone had rendered him permanently and totally disabled. According to Dr. Wolfgram, Appellee's psychiatric conditions originated with his work-related accident.

Also included in the evidence was the deposition testimony of Dr. James Long, a professor of economics at Auburn University hired by Appellee to calculate his wage losses to retirement age. Dr. Long determined Appellee's wage losses from October 2, 1995, discounting it to present value, based on Appellee's wages at the time of the accident, his fringe benefits and any mitigating income. According to Dr. Long's calculations, Appellee's past wage losses totaled $244,784.00. Dr. Long then determined Appellee's future wage losses as follows: losses of $1,226,101.00, if Appellee retired at the age of 65; losses of $1,426,851.00, for retirement at 67; and losses of $1,735,573.00, for retirement at the age of 70.

Appellant also deposed Nelson Wolff, Appellee's FELA attorney on September 3, 1999, in connection with the divorce case. According to Wolff, the railroad paid most, but not all, of Appellee's medical bills during the course of the lawsuit, therefore resulting in the allocation of a portion of the FELA proceeds as payment to those medical providers. When asked if he had any type of breakdown of the proceeds actually paid to Appellee, Wolff responded

---

[2] Dr. Wolfgram's deposition was entered into evidence in this matter to show what evidence was available to the parties in the FELA suit, not for the purpose of proving the truth of the matters asserted.

that he did not, but explained that Missouri jury instructions and verdict forms are general forms that do not allow for an apportionment of damages. Wolff also testified that after the parties agreed to reach a settlement on April 6, they decided to go ahead and complete the paperwork the following day because both parties were anxious to settle the matter. Wolff stated that it was his and Appellee's position throughout the litigation and settlement that Appellee suffered a severe injury as a result of the work-related accident. According to Wolff, there was compelling evidence to establish that Appellee was severely and permanently disabled as a result of the accident and that his subsequent medical treatments left him disabled from gainful employment.

In sum, the overwhelming evidence before the chancellor established that Appellee suffered a permanent disability that ended his career with the railroad and has prevented him from maintaining gainful employment. In addition, Appellee testified about the nature and extent of his injuries, and stated that the pain he continues to suffer as a result of those injuries prevents him from maintaining gainful employment. He stated that prior to the settlement, he attempted to work part time, first as a substitute teacher and then doing some office work, but was unable to stay with either job. He also testified that he was forced to sell CM&K Bodyshop because he was unable to do the physical activities required of the business. Appellant stated that he received occupational-disability benefits following the accident, but returned $3,394.09 of his disability and sick pay to the Railroad Retirement Board from his settlement proceeds.

Moreover, in agreeing to settle his FELA claim, Appellee acknowledged that he suffered from a permanent disability resulting in his inability to return to work for the railroad. The release referenced the specific accident that led to Appellee's injuries and states in relevant part:

> Considering myself permanently disabled as a result of said accident and injuries, I further agree as a consideration for the payment to me of the sum of money mentioned herein, that I shall not return, nor attempt to return, to work for the Union Pacific Railroad Company/Missouri Pacific Railroad Company/Southern Pacific Railroad Transportation Company, or any affiliated or subsidiary companies in any capacity, and I hereby resign from active service effective this date. As a further consideration of this settlement, I hereby agree to never return or attempt to return to the

employ of Union Pacific Railroad Company, its successors, affiliates, assigns, or subsidiaries, in any capacity, and any attempt to do so will be grounds for immediate disqualifications and/or dismissal.

That in determining said consideration there has been taken into consideration not only the ascertained injuries, disabilities and damages but also the possibility that the injuries sustained may be permanent and progressive and recovery therefrom uncertain and indefinite, so that consequences not now anticipated may result from the said accident, and for the consideration of the amount aforementioned, it is the express intention and desire of the undersigned to release, discharge and acquit Union Pacific Railroad Company/Missouri Pacific Railroad Company/Southern Pacific Transportation Company, their agents, servants and employees, and all other persons, firms and corporations liable, or who might be claimed liable, from any and all claims, demands and choses in action arising from the injuries, disabilities and damages sustained in the said accident which are uncertain, indefinite and the consequences of which are not now anticipated[.]

In *Skelton v. Skelton*, 339 Ark. 227, 5 S.W.3d 2 (1999), this court held that a husband provided sufficient proof to establish that his disability payments were exempt from the definition of marital property. In reaching this conclusion, this court utilized a two-prong test originally set forth in *Mason v. Mason*, 319 Ark. 722, 895 S.W.2d 513 (1995). The first prong requires that the claim be for a degree of permanent disability or future medical expenses. Second, the injury must be sustained while on the job or in the consequence of a tortious act. *Id.*

Here, there was evidence about the extent of Appellee's injuries and the continued problems he experiences as a result of the accident. The evidence specifically demonstrated that Appellee suffers from a degree of permanent disability. The evidence also demonstrated that Appellee has been unable to maintain gainful employment due to his permanent disability. Moreover, the release executed in conjunction with the settlement of Appellee's FELA claim, recognized that Appellee was permanently disabled. We believe this evidence was sufficient to satisfy the first prong of the *Mason* test, that the FELA proceeds were awarded for a degree of permanent disability. It is also undisputed that Appellee's injury was sustained in the course of his employment, thus satisfying the second prong of *Mason*. The chancellor relying on this court's previous decisions in *Mason* and *Skelton* determined that Appellee proved by

a preponderance of the evidence that the settlement proceeds were awarded as a result of his permanent disability.

The dissent erroneously concludes that this case should be remanded because the chancellor failed to allocate the settlement proceeds. Pointing specifically to evidence of Appellee's past lost wages, the dissent states that it was error for the trial court not to divide the $244,784.00 as marital property. This argument, however, amounts to nothing more than the dissent substituting its judgment for that of the chancellor. The evidence regarding the past lost wages came in the form of an expert's deposition testimony taken prior to trial in preparation for Appellee's FELA suit. Dr. Long, an economics expert retained by Appellee, testified regarding his opinion of Appellee's past and future lost wages. There was absolutely no evidence that any part of the actual settlement proceeds represented a portion of lost wages, past or future. There is nothing in the record before us to indicate that the trial court did not consider this evidence in reaching his conclusion that the entire settlement was awarded for a degree of permanent disability.

██ In fact, as previously pointed out, the overwhelming amount of evidence presented in this matter supports the chancellor's conclusion that this award was for a degree of permanent disability and, thus, not subject to division as marital property. The chancellor analyzed the evidence before him in a manner consistent with this court's analysis in *Skelton*, 339 Ark. 227, 5 S.W.3d 2. First, the chancellor determined that based on the evidence before him the settlement was awarded for a degree of permanent disability. Secondly, he determined that the disability was job related. Only then did the chancellor conclude that the award was not marital property and therefore not subject to division. In the absence of any proof to the contrary, we cannot say that the chancellor was clearly erroneous in finding that the FELA proceeds were not subject to division as marital property.

### III. Analytic vs. Mechanistic Approach

██ Finally, Appellee urges this court to adopt the analytic approach in determining the nature of personal injury settlements for purposes of marital distribution. Appellee contends that with the enactment of section 9-12-315(b)(6), Arkansas in fact adopted the analytic approach. Appellant argues that this issue is not properly before us, as Appellee failed to raise it below. Appellant also

argues that this court has already adopted the mechanistic approach, and such an approach should remain the law. We decline to reach the merits of Appellee's argument on this point, as it is raised for the first time on appeal. *See Webber v. Webber*, 331 Ark. 395, 962 S.W.2d 345 (1998). Our refusal to address this issue in the present case does not foreclose the possibility of addressing it in the future when the issue is properly before us.

Affirmed.

ARNOLD, C.J., GLAZE and IMBER, JJ., dissent.

TOM GLAZE, Justice, dissenting. I disagree with the majority decision. The court's holding does correctly recognize that *Clayton v. Clayton*, 297 Ark. 342, 760 S.W.2d 875 (1988), controls, but the court then erroneously applies the rule in *Clayton*.

In *Clayton*, this court held that a spouse's Federal Employers' Liability Act (FELA) claim for an unliquidated personal injury is subject to being divisible as marital property under Ark. Code Ann. § 9-12-315, however, the *Clayton* court excepted from marital property those FELA benefits received for any degree of permanent disability or future medical expenses. In *Clayton*, this court remanded, instructing the lower court to hold further proceedings and to make necessary findings to determine what benefits were to be considered marital property and distributed under § 9-12-315.

Unlike in *Clayton*, here appellee Cornelius Collins settled his FELA claim with his employer, Union Pacific Railroad Company (Union Pacific), in the gross amount of $742,000, but deducting therefrom attorneys' fees, litigation and other costs, leaving him a lump-sum payment of $480,717.18. Collins then structured this net amount, claiming all of it was for permanent disability or future medical expenses, thus, making these specific benefits indivisible as non-marital property under § 9-12-315(b)(6).[1] The trial court then improperly adopted Collins's manipulation of his settlement terms that completely excluded his wife, Martha Collins, from sharing in any of his FELA benefits.

---

[1] Provision (b)(6) reads:

(b) For the purpose of this section, "marital property" means all property acquired by either spouse subsequent to the marriage *except*:

(6) Benefits received or to be received from a workers' compensation claim, personal injury claim, or social security claim when *those benefits* are *for* any degree of *permanent disability or future medical expenses*. (Emphasis added.)

Our court and the General Assembly have clearly decided that divorcing spouses should share in unliquidated personal injury claims — except for permanent disability and future medical expenses. Consequently, we should not permit an injured spouse to settle around the other spouse by manipulating settlement terms so as to designate all benefits as resulting from a permanent disability.[2]

Mr. Collins's unrebutted expert testimony rendered by Dr. James Long at the hearing on this matter reflects Collins had suffered past wage losses in the amount of $244,784.00.[3] That being so, such past lost-wage benefits accumulated during the marriage are clearly marital property to be equally distributable under § 9-12-315(a). The trial court's failure to state reasons for failing to divide these lost wages equally was error. *See Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988); *see also Duncan v. Duncan*, 11 Ark. App. 25, 665 S.W.2d 893 (1984). Candidly, it makes no sense for the trial court to accept the injured spouses' argument that he sustained a permanent injury without acknowledging he also suffered past medical expenses and lost income. In fact, as already pointed out, that is exactly what the proof here showed below. For this reason alone, this case should be reversed and remanded for further proceedings.

Another benefit in issue arises involving a $14,856.85 check which was made payable to Mr. Collins. Although the trial court's finding suggests Mr. Collins received checks payable to medical providers in the amount of $14,856.85, the record reflects a check was made payable in this amount to Mr. Collins.[4] It appears the trial

---

[2] In Mr. Collins's release to Union Pacific, he said, "Considering myself permanently disabled as a result of said accident and injuries, I further agree as a consideration for the payment to me of the sum of money mentioned herein, that I shall not return, nor attempt to return to work for [Union Pacific]."

[3] The majority opinion concedes this testimony, but then suggests there is nothing in the record to indicate the chancellor did not consider this evidence in reaching his conclusion that the entire settlement was awarded for permanent disability. Again, the majority loses sight of the fact that past lost wages are marital property and, once that was established, it was the chancellor's responsibility to comply with the requirement to state the basis for not dividing the property equally. No such reasons or findings are found in the chancellor's decision.

[4] At pages 96-109 in the transcript, particularly Mr. Collins's attorney, Nelson Gregory Wolff, testified to damages sustained by Mr. Collins and how settlement monies were disbursed. Wolff said:

> There are checks that are paid to Neal (Collins), and on the back, he endorsed to medical providers for, for Neal himself so he can walk out of the office and not worry about having to deal with paying medical bills now, in the future or expenses or anything.

court's finding was clearly erroneous on this point, and it, too, should be reconsidered by the trial court on remand.

In conclusion, I point out that my earlier interpretation of Arkansas' marital property statute, Ark. Code Ann. § 9-12-315 (Repl. 1998), was that a spouse's "unliquidated" personal injury claim is not marital property. However, I lost that argument in a 4-3 decision in *Bunt v. Bunt*, 294 Ark. 507, 744 S.W.2d 718 (1988) (Hickman, Purtle and Glaze, JJ., dissenting). In that dissent, I posed a series of questions concerning problems that likely would arise when judges would be required to retain jurisdiction to divide future proceeds from personal injury claims.

While I remain firmly convinced that a spouse's unliquidated personal injury claims should not be marital property, our case law now clearly holds otherwise. In addition, the General Assembly has not deemed it necessary to modify § 9-12-315 so as to except such personal injury claims; instead, in 1987, it merely amended § 9-12-315(b), only to exclude the marital property benefits from personal injury claims when those *benefits are for* any degree of *permanent disability or future medical expenses*. However, by endorsing a procedure under § 9-12-315, whereby an injured spouse can unilaterally settle his personal injury claim so as to exclude his or her spouse, we can expect more cases like the instant one and ex-spouses will find themselves without recourse to protect whatever benefits that were intended for them under the statute. We should reverse and remand for the reasons above.

ARNOLD, C.J., and IMBER, J., join this dissent.

* * *

The first check was in the amount of $14,856.85 that was made payable to Neal. That was a breakdown of part of the settlement so that he wouldn't have to carry it all in a big lump sum. He received a bigger check later. At the bottom he gets another check in the amount of $480,787.18.

These checks were all payable to Neal. Some of them were on behalf of outstanding medical bills that may have been related or unrelated to the case and that is how they were prepared. The checks that have medical providers in parenthesis, were all medical bills due and owing at the time of settlement.

Clearly from Wolff's unrebutted testimony, Mr.Collins was paid for past medical expenses and checks were both related and unrelated to Collins's FELA claim. Obviously, the past medical expenses are not excepted from the marital property statute, and if the chancellor desired to treat these checks as nonmarital, he was required to state his reasons for doing so. Again, the chancellor merely accepted Mr. Collins's settlement terms as providing all funds paid to be for permanent disability and future medical expenses, which was wrong.

ANNABELLE CLINTON IMBER, Justice, dissenting. I agree with Justice Glaze's dissenting opinion. Appellee not only claimed a degree of permanent disability and future medical expenses, but he also claimed past medical expenses, past lost-wage benefits, and pain and suffering. As noted by Justice Glaze in his dissenting opinion, the amounts allocable to past lost-wage benefits and past medical expenses are easily deducible. Likewise, the record contains ample evidence from which a reasonable inference could be drawn that would preponderate in finding some of the loss sustained to be due to pain and suffering. The fact that a specific allocation was not made in the settlement documents should not preclude a finding that the award was intended to compensate for a particular purpose and the amount thereof; this is the province of the fact-finder in every case. The majority's holding today effectively overrules our decisions in *Clayton v. Clayton, supra,* and *Bunt v. Bunt, supra,* by permitting a settlement loophole to transmute marital property into nonmarital property. The case should be reversed and remanded for a determination and division of amounts that are allocable as past lost-wage benefits, past medical expenses, and pain and suffering.

ARNOLD, C.J., and GLAZE, J., join in this dissent.