726 So.2d 393 (1999)
Steven R. JOHNSON, Appellant/Cross-Appellee,
v.
Denise P. JOHNSON, Appellee/Cross-Appellant.
No. 98-1223.
District Court of Appeal of Florida, First District.
February 15, 1999.
*394 Gary Work, Pensacola, for Appellant/Cross-Appellee.
Karen Lessard, Pensacola, for Appellee/Cross-Appellant.
LAWRENCE, J.
Steven Johnson (Husband) appeals from a final judgment of dissolution, and Denise Johnson (Wife) cross appeals. While numerous issues were raised by the parties, we find only one to have merit. The trial court properly considered the Husband's police pension plan as a marital asset, but erred in its valuation for the purpose of equitable distribution. The only evidence of the value of the police pension plan related to actual cash contributions. No evidence of its present value was presented. We therefore reverse and remand for a proper calculation of the Husband's police pension plan, utilizing the concept of present value. Since reconsideration of the value of this asset will likely affect the overall equitable distribution plan, we also remand with instructions to re-consider the equitable distribution of the parties' marital assets in light of the changed valuation. See Dal Ponte v. Dal Ponte, 692 So.2d 283 (Fla. 1st DCA 1997)(holding that where the trial court awarded the former husband the value of his pension plan but failed to calculate the present value of the plan, case must be reversed and remanded for re-determination of equitable distribution).
We affirm in all other respects. However, because one of the issues which we affirm appears to be one of first impression in this state, some discussion is warranted.
The parties were married for approximately fifteen years. The Husband worked as a police officer with the Pensacola Police Department (Department) during this time. The wife worked most of the marriage as an licensed practical nurse. The Husband, in addition to participating in the police pension plan, participated in two other retirement plans through his employment with the Department. One was the Social Security Replacement Plan. The City of Pensacola, in lieu of federal social security contributions, deducted an equivalent amount from the Husband's salary, and placed it in the Social Security Replacement Plan. He therefore would not receive any federal social security benefits in the future as the result of his job with the Department.
The trial court in the instant case treated the Husband's Social Security Replacement Plan as a marital asset subject to equitable distribution pursuant to section 61.076(1), Florida Statutes (1997).[1] The Husband argued that the Social Security Replacement Plan was similar to federal social security benefits, which are not considered marital assets, and should therefore not be *395 subject to equitable distribution. He further argued that even if the Social Security Replacement Plan was marital property, the trial court erred when it failed to consider the Wife's future federal social security benefits as an offset.
Several other states have dealt directly with the issue of whether retirement plans that substitute for federal social security should be considered a marital asset. Minnesota, Connecticut, Wisconsin, Utah, North Dakota, and West Virginia consider such substitute plans to be a marital asset.[2] Pennsylvania and Ohio do not.[3]
In Mack v. Mack, 108 Wis.2d 604, 323 N.W.2d 153 (Wis.Ct.App.1982), the court held that a federal pension plan that replaces social security benefits is not the same as federal social security. The Mack court explained:
Although an employee's social security account increases in relative value over his working life, social security is not a property like a pension. It is a system of social insurance. "To engraft upon the social security system a concept of accrued property rights would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands."
Mack, 323 N.W.2d at 156 n. 1 (quoting Flemming v. Nestor, 363 U.S. 603, 609, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). Similarly, we believe that substitute pension plans such as the one in issue, are not so similar to federal social security benefits as to render them exempt from the provisions of section 61.076(1), Florida Statutes. We therefore hold that pension plans, such as the Social Security Replacement Plan at issue and similar plans which purport to substitute for federal social security, are marital assets and should be distributed pursuant to section 61.076(1), Florida Statutes. The trial court thus properly considered the instant Social Security Replacement Plan as a marital asset. See Olson v. Olson, 445 N.W.2d 1 (N.D.1989)(holding that former husband's highway patrol retirement fund could be taken into account in dispersing marital property, even though the fund was a substitute for social security).
With respect to whether the court should have considered the Wife's future social security benefits as an offset to the Husband's Social Security Replacement Plan, Marriage of Berthiaume, 1991 WL 90839 (Minn.Ct.App.1991) is instructive. In Berthiaume, the facts were very similar except that only a portion of the former husband's pension plan served as a substitute for federal social security. The appellate court affirmed the trial court's treatment of the entire pension plan as a marital asset with no off-set for the wife's federal social security benefits, and explained:
Prior to 1975, social security benefits were not subject to execution, levy, attachment, garnishment or other legal process. 42 U.S.C. § 407(a) (1974). In 1975 Congress created an exception for child support and alimony payments. 42 U.S.C. § 659(a) (1976). Since 1977 Congress has narrowly defined "alimony" as periodic payments for the support and maintenance of a former spouse and expressly excluded any payment or transfer of property in compliance with any equitable distribution of property between spouses. 42 U.S.C. § 662(c) (1990).
This provision not only prohibits the outright division of social security benefits, it also prohibits the indirect division of benefits by awarding a nonparticipating spouse other marital property to compensate for his or her theoretical share of the participating spouse's benefits. See Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979)(any offset to a nonemployee spouse to compensate for nondivisible federal railroad benefits owned by an *396 employed spouse impermissibly conflicted with federal law under the supremacy clause)....
Berthiaume, 1991 WL 90839 at *1-*2. The court summarized by explaining that federal law was controlling, and that this law "prohibits an indirect division of federally regulated social security benefits by allowing a compensatory offset to the nonparticipating spouse in a state dissolution action." Id. at *2. We find this rationale to be persuasive.[4] Accordingly, the trial judge in the instant case did not err in declining to offset the Wife's future social security benefits.[5]
In sum, we REVERSE and REMAND for a re-determination of an equitable distribution of the marital assets, utilizing the concept of present value of the Husband's police pension plan. We AFFIRM the judgment of the trial court in all other respects.
MINER, J. and McDONALD, PARKER L., Senior Judge, CONCUR.
NOTES
[1] Section 61.076(1), Florida Statutes (1997), provides:

(1) All vested and non-vested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution.
[2] Marriage of Berthiaume, 1991 WL 90839 (Minn.Ct.App.1991); McGran v. McGran, 1995 WL 907577 (Conn.Super.Ct.1995); Mack v. Mack, 108 Wis.2d 604, 323 N.W.2d 153 (Wis.Ct. App.1982); Jefferies v. Jefferies, 895 P.2d 835 (Utah Ct.App.1995); Loudermilk v. Loudermilk, 183 W.Va. 616, 397 S.E.2d 905 (W.Va.1990); Olson v. Olson, 445 N.W.2d 1 (N.D.1989).
[3] Cornbleth v. Cornbleth, 397 Pa.Super. 421, 580 A.2d 369 (1990); Endy v. Endy, 412 Pa.Super. 398, 603 A.2d 641 (1992); Schneeman v. Schneeman, 420 Pa.Super. 65, 615 A.2d 1369 (1992); Eickelberger v. Eickelberger, 93 Ohio App.3d 221, 638 N.E.2d 130 (1994); Walker v. Walker, 112 Ohio App.3d 90, 677 N.E.2d 1252 (1996); McClain v. McClain, 693 A.2d 1355 (Pa.Super. 1997); Cohenour v. Cohenour, 696 A.2d 201 (Pa.Super.1997).
[4] In Hisquierdo, the court held that the husband's Railroad Retirement Act (RRA) benefits resulting from employment during marriage were not marital property and so not subject to equitable distribution. The court explained that "[l]ike Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time." Hisquierdo, 439 U.S. at 575, 99 S.Ct. 802. The wife in Hisquierdo, frustrated that she would not receive any of the benefits from her husband's RRA plan, argued that she should receive some presently available community property to compensate her for her interest in the RRA benefits. The court, in denying her request, explained:

An offsetting award ... would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his benefit check. The harm might well be greater. Section 231m [of the RRA] provides that payments are not to be "anticipated." Legislative history throws little light on the meaning of this word. In the law of trusts, however, a prohibition against anticipation is commonly understood to mean that "the interest of a sole beneficiary shall not be paid to him before a certain date." E. Griswold, Spendthrift Trusts § 512, p. 583 (2d ed. 1947). The Railroad Retirement Act resembles a trust in certain respects. If that definition is applied here, then the offsetting award respondent seeks would improperly anticipate payment by allowing her to receive her interest before the date Congress has set for any interest to accrue.
Any such anticipation threatens harm to the employee, and corresponding frustration to federal policy, over and above the mere loss of wealth caused by the offset. If, for example, a nonemployee spouse receives offsetting property, and then the employee spouse dies before collecting any benefits, the employee's heirs or beneficiaries suffer to the extent that the offset exceeds the lump-sum death benefits the Act provides. See 45 U.S.C. § 231e. Similarly, if the employee leaves the industry before retirement, and so fails to meet the "current connection with the railroad industry" requirement for certain supplemental benefits, see 45 U.S.C. § 231a(b)(1)(iv), the employee never will fully regain the amount of the offset. A third possibility, of course, is that Congress might alter the terms of the Act. In 1974, Congress eliminated certain double benefits accruing after 1982. If past California property settlements had been based on those benefits, then the change in the Act would have worked a multiple penalty on future recipients. By barring lump-sum community property settlements based on mere expectations, the prohibition against anticipation prevents such an obvious frustration of congressional purpose. It also preserves congressional freedom to amend the Act, and so serves much the same function as the frequently stated understanding that programs of this nature convey no future rights and so may be changed without taking property in violation of the Fifth Amendment.
Hisquierdo, 439 U.S. at 588-590, 99 S.Ct. 802. Steven, like the wife in Hisquierdo, is asking for an offset to compensate him for the value of Denise's possible future social security benefits. As the Court in Hisquierdo explained, it would be improper for a trial court to award an offset based on federal social security. Accordingly, the trial court in the instant case did not err in declining to consider Denise's possible future social security benefits.
[5] In Bain v. Bain, 553 So.2d 1389 (Fla. 5th DCA 1990), a dissolution case, the husband worked for NASA and contributed to a civil service retirement plan in lieu of Social Security. The trial court granted the wife, among other things, a 25% interest in the husband's civil service retirement plan. The Fifth DCA reversed the trial court, finding that the wife received the bulk of the marital assets without competent evidence to justify the distribution. The court appeared to consider the civil service retirement plan to be a marital asset, although this issue was not expressly addressed.

The Bain court, in a footnote, states that when awarding a portion of a pension plan that acts in place of social security, the failure of the court to consider the future social security benefits of a non-employee spouse creates an inequity by "produc[ing] a windfall for the non-employee spouse." Bain, 553 So.2d at 1392 n. 4.